Danny Ray WATTS *v.* Janice C. WATTS

CA 85-446                                          707 S.W.2d 777

Court of Appeals of Arkansas
Division I
Opinion delivered April 16, 1986

*Highsmith, Gregg, Hart, Farris & Rutledge*, by: *Josephine L. Hart*, for appellant.

*Bennett & Purtle*, for appellee.

GEORGE K. CRACRAFT, Chief Judge. Danny Ray Watts and Janice C. Watts were divorced in August of 1984 by a decree which awarded custody of their minor child to the father with specific visitation rights in the mother in accordance with a property settlement agreement. In July of 1985, the chancellor entered an order modifying that decree, finding that the mother's petition for a change of custody should be granted because of a change in circumstances since the date of the original divorce decree which affected the best interest of the child. The appellant contends on appeal that the finding of the chancellor that there had been such a change in circumstances affecting the welfare of the child as would justify a modification of the custodial order is clearly against the preponderance of the evidence. We find no merit to this contention.

The principles governing the modification of custodial orders are well settled and require no citation. In all such cases the primary consideration is the best interest and welfare of the child and all other considerations are secondary. Custody awards are not made or changed to gratify the desires of either parent, or to reward or punish either of them. In determining

matters of child custody, a chancellor has broad discretion, which will not be disturbed unless manifestly abused. While the chancery court retains continuing power over the matter of child custody which has been awarded to one of the parents, it does not follow that changing that status should be made without proof of a subsequent material change in the circumstances affecting the welfare of the child. The original decree is a final adjudication that one parent or the other was a proper person to have care and custody of the child and before that order can be changed there must be proof of material facts which were unknown to the court at that time or that the conditions have so materially changed as to warrant modification and that the best interest of the child requires it. The burden of proving such a change is on the party seeking the modification. *Sweat* v. *Sweat*, 9 Ark. App. 326, 659 S.W.2d 516 (1983).

It is also well settled that although this court reviews chancery cases *de novo* on the record, the findings of the chancellor will not be disturbed unless clearly against a preponderance of the evidence. Since the question of preponderance of the evidence turns largely on the credibility of the witnesses, we defer to the superior position of the chancellor. ARCP Rule 52(a); *Callaway* v. *Callaway*, 8 Ark. App. 129, 648 S.W.2d 520 (1983). This deference to the chancellor is even greater in cases involving child custody. In those cases a heavier burden is placed on the chancellor to utilize to the fullest extent all of his powers of perception in evaluating the witnesses, their testimony, and the child's best interest. We have often stated that we know of no cases in which the superior position, ability, and opportunity of the chancellor to observe the parties carry as great a weight as those involving minor children. *Calhoun* v. *Calhoun*, 3 Ark. App. 270, 625 S.W.2d 545 (1981).

Appellant first contends that the chancellor erred in finding a material change in circumstances warranting a change of custody. The appellee testified that, although the decree awarded her rights to visit the child at specific times and during the summer months, the appellant had systematically interfered with and refused her the enjoyment of her rights of visitation. She testified that when she threatened to seek enforcement of those rights, the appellant moved the child to the State of Arizona without informing her of his intentions or whereabouts. She was

unable to see the child for a period of four or five months and even had difficulty communicating with the child by telephone. In *Phelps* v. *Phelps*, 209 Ark. 44, 189 S.W.2d 617 (1945) our court recognized that a substantial denial of court-awarded visitation was a factor to consider in such cases and might constitute the required material change in circumstance.

The appellee also offered testimony that, although the appellant had been entrusted with the primary care of the child, he had not fulfilled that obligation. There was testimony that appellee's mother primarily cared for the child until she was removed to Arizona. The child corroborated that testimony and stated that while in Arizona she was primarily in the care of other relatives. Failure to discharge court-entrusted care and custody of a minor child is also a factor which a chancellor might consider in determining whether there was a material change in circumstances as well as whether a change in custody was required in the best interest of the child.

The appellee further testified that at the time the original decree was entered she agreed to the custodial order because she had not yet completed her course of studies at Arkansas State University. She stated she agreed to that order only for such time as required to obtain her degree and find suitable employment.

The appellant denied any interference with the visitation rights, that the agreement for custody was temporary, and that he had not cared for the child. The evidence on these issues was in sharp conflict, as was the evidence of the suitability of the surroundings in which each party would place the child, their respective past and present abilities to properly care and provide for the child, and which parent would be better able to foster the child's welfare.

The main thrust of appellant's argument, however, is that the chancellor erred in finding that the change of custody was in the best interest of the child because of appellee's immorality. He argued that, at the time the decree was entered, the appellee had lived with one man and, at the time of the hearing to modify the order, was cohabiting with another. He argues that she had been so sexually promiscuous during the entire period that it was inconceivable that placing the child in her custody would foster the best interest of the child, citing *Digby* v. *Digby*, 263 Ark. 813,

567 S.W.2d 290 (1978). The only evidence on that issue was appellee's candid admission that at or about the time the divorce was granted she had an adulterous affair with a person named Don. She further testified, however, that within a week of the date the decree was entered she had realized her mistake and broken off that affair. The evidenced introduced at the hearing included a letter from appellee to appellant, dated September 10, 1984, in which she asked his forgiveness, stating, "None of it was worth it. I've made a big mistake. I swear that Don has been the only one. I've prayed to God everyday to take my life—to ease the pain of what I have done." She expressed those same sentiments to the court, stating, "I have regretted it sorely and will all my life. I can't go back and change it, but I can go back and change some things and I can try." She also admitted that she began sharing an apartment with a person named Charles the week before the hearing, but stated, "[W]e plan to be married the end of this week or next week. He is in the process of getting a divorce and it should be final either the fifth of the month or soon thereafter." She denied involvement with any other men and there was no proof to the contrary.

The decision in *Digby*, and those in *Bone* v. *Bone*, 12 Ark. App. 163, 671 S.W.2d 217 (1984) and *Scherm* v. *Scherm*, 12 Ark. App. 207, 671 S.W.2d 224 (1984), are distinguishable from the present case in several material respects. In those cases the appellants had casual sexual relationships with a number of different men over short periods of time, none of them saw anything morally wrong with their conduct, and none intended to change their lifestyle. Also in those cases the court relied on additional facts which indicated that the custodial parent had otherwise failed to properly care for the children. The custodial awards in those cases were not intended as punishment for an erring parent, but based on a determination that the conduct of a custodial parent was detrimental to the best interest of the child. Although our courts have never condoned such conduct, it has always recognized a distinction between human weakness leading to isolated acts of indiscretion, which do not necessarily adversely affect the interest of a child, and that moral breakdown leading to promiscuity and depravity, which render one unfit to have custody of a minor. *Harris* v. *Gillihan*, 226 Ark. 19, 287 S.W.2d 569 (1956); *Blain* v. *Blain*, 205 Ark. 346, 168 S.W.2d

807 (1943). The chancellor was in a superior position to assess the sincerity of appellee's atonement, her intent to immediately marry Charles, and the effect of these transgressions on the welfare of the child. With his continuing jurisdiction, he is in a position to, and should, verify those expressions of sincerity by monitoring future conduct. Based on our review of the record and giving due deference to the chancellor's superior position, we cannot conclude that the action taken is against a clear preponderance of the evidence or that there was an abuse of discretion.

Affirmed.

CLONINGER and CORBIN, JJ., agree.