Jennifer Nicole Remick WORD *v.* Frank D. REMICK, Sr.

CA 01-148 58 S.W.3d 422

Court of Appeals of Arkansas
Division IV
Opinion delivered November 7, 2001

*Eugene D. Bramblett*, for appellant.

*Thomas L. Mays*, for appellee.

JOHN MAUZY PITTMAN, Judge. The parties in this child-custody case were divorced in December 1999. They were awarded joint and shared custody of their two minor children, a four-year-old girl and a two-year-old boy. Neither party was ordered to pay child support. Appellee filed a petition for change of custody in August 2000. Appellant filed a counterclaim, also seeking sole custody of the children. After a hearing, the chancellor found that there had been a material change in circumstances and that it would be in the children's best interest to award custody to the appellee. From that decision, comes this appeal.

For reversal, appellant contends that the chancellor erred in finding that there had been a material change of circumstances warranting a change of custody; that appellee was barred under the clean-hands doctrine from asserting that there had been a change of the custodial arrangement from "joint" custody to "split" custody because that change was solely the result of appellee's improper conduct; and that the chancellor erred in basing his finding that it would be in the children's best interest to award custody to the appellee solely on the fact that appellee was the first to quit living in a sexually illicit relationship. We affirm.

The principles governing the modification of custodial orders are well-settled and require no citation. The primary consideration is the best interest and welfare of the child. All other considerations are secondary. Custody awards are not made or changed to punish or reward or gratify the desires of either parent. Although the chancery court retains continuing power over the matter of child custody after the initial award, the original decree is a final adjudication of the proper person to have care and custody of the child. Before that order can be changed, there must be proof of material facts which were unknown to the court at that time, or proof that the conditions have so materially changed as to warrant modification and that the best interest of the child requires it. The burden of proving such a change is on the party seeking the modification. *Watts v. Watts*, 17 Ark. App. 253, 707 S.W.2d 777 (1986).

■■ The role of the appellate court in appeals from modification of custody orders is also well settled. We review chancery cases *de novo* on the record, but the chancellor's findings will not be disturbed unless clearly against the preponderance of the evidence. Since the question of the preponderance of the evidence turns largely upon the credibility of the witnesses, we defer to the superior position of the chancellor. Because a chancellor charged with deciding a question of child custody must utilize to the fullest extent all of his powers of perception in evaluating the witnesses, their testimony, and the child's best interest, there are no cases in which the superior position, ability, and opportunity of the chancellor to observe the parties carry as much weight as in those involving child custody. Our deference to the chancellor is correspondingly greater in such cases. *Fitzpatrick v. Fitzpatrick*, 29 Ark. App. 38, 776 S.W.2d 836 (1989).

The parties in the present case had a four-year-old girl and a two-year-old boy when they divorced in December 1999. The decree provided for joint and shared custody of the children. The parties resided in the same town, within a few blocks of one another, and this arrangement initially worked well. Appellee worked nights and appellant worked days. One party kept the children while the other party was at work, and they alternated custody on weekends.

Appellee later remarried and was assigned to a day shift. The original arrangement was no longer workable, so the parties arranged for custody of the children to alternate between them every week. This arrangement was not successful. The parties could not agree on a regular routine. Disputes over day-to-day custodial issues escalated from heated arguments to physical altercations between appellant and appellee's new wife. Appellee filed a petition to change custody. After the petition was filed, custody of the children was split between the parties, with each party having custody of one child. Appellee testified that he did not trust the appellant to return the children following visitation; he stated that appellant threatened to withhold them from him. Consequently, although they were exchanged between the parents at intervals, the children were never together.

■ We first address appellant's contention that the chancellor erred in finding that there had been a material change of circumstances warranting a change of custody. With reference to evidence of appellee's remarriage and generally improved circumstances since the original custodial order was entered, appellant argues that a

change of circumstances of the noncustodial parent is an insufficient basis to justify modification of a child-custody award.[1] This question is academic. Appellee was not a noncustodial parent. He was, instead, a custodial parent by virtue of the order of joint and shared custody in the parties' divorce decree.

 Appellant also argues that we should reverse because appellee failed to enumerate specific instances of changed circumstances in his pleadings, and because the chancellor's order failed to mention any specific change to support his finding of a material change in circumstances. We find no error on this point. There was no objection below to the lack of specificity of appellee's pleadings, and when issues not raised in the pleadings are tried by the express or implied consent of the parties, Ark. R. Civ. P. 15(b) requires that the pleadings be treated as amended to conform to the proof. Here, appellant was also seeking sole custody of the children, and both parties put on extensive evidence to show that there was a material change of circumstances. Furthermore, in the absence of a request for specific findings under Ark. R. Civ. P. 52(b), the chancellor was not required to expressly detail the facts supporting his finding of a material change in circumstances, and our review is directed toward determining whether there was sufficient evidence from which the chancellor could have found such a change in circumstances. *Hamilton v. Barrett*, 337 Ark. 460, 989 S.W.2d 520 (1999).

██ ██ There was unquestionably such evidence in the present case. Joint custody or equally divided custody of minor children is not favored in Arkansas unless circumstances clearly warrant such action. *Thompson v. Thompson*, 63 Ark. App. 89, 974 S.W.2d 494 (1998). The mutual ability of the parties to cooperate in reaching shared decisions in matters affecting the child's welfare is a crucial factor bearing on the propriety of an award of joint custody, and

---

[1] The case relied upon by appellant for this proposition, *Jones v. Jones*, 326 Ark. 481, 931 S.W.2d 767 (1996), has been limited to its own facts by the Arkansas Supreme Court in an opinion that expressly states that the interpretation urged by appellant is too narrow. *Hamilton v. Barrett*, 337 Ark. 460, 989 S.W.2d 520 (1999). Although the Supreme Court recently restated the proposition in *Lloyd v. Butts*, 343 Ark. 620, 37 S.W.3d 603 (2001), it did so without overruling or even mentioning its prior contrary decision in *Hamilton v. Barrett*, *supra*. Although the holdings regarding this issue are less than clear, it appears that, while a non-custodial parent's changed circumstances may not, standing alone, constitute a material change in circumstances warranting modification of a custody order, a non-custodial parent's changed circumstances nevertheless may properly be considered as a factor in determining whether such a material change in circumstances has occurred. *Compare Hamilton v. Barrett*, *supra*, and *Lloyd v. Butts*, *supra*. In the present case, in addition to the evidence that appellee's circumstances had changed for the better, there was evidence that the joint and shared custody decree had become unworkable because of appellant's intransigence. *See infra*.

such an award is reversible error where cooperation between the parents is lacking. *See Hansen v. Hansen*, 11 Ark. App. 104, 666 S.W.2d 726 (1984). In the case at bar, it is undisputed that the parties have fallen into such discord that they are unable to cooperate in sharing the physical care of the children, and this constitutes a material change in circumstances affecting the children's best interest. *See Thompson, supra.*

Appellant next asserts that it was solely the fault of appellee that the parties were unable to cooperate and exercise joint custody of the children, and contends that the appellee therefore was barred under the clean hands doctrine from relying on that fact. We do not agree.

The maxim, "He who comes into equity must come with clean hands," bars relief to those guilty of improper conduct in the matter as to which they seek relief because equity will not intervene on behalf of a plaintiff whose conduct in connection with the same matter has been unconscientious or unjust. *Wilson v. Brown*, 320 Ark. 240, 897 S.W.2d 546 (1995). This maxim is not applied to favor a defendant, and has nothing to do with the rights or liabilities of the parties, but instead is invoked in the interest of the public on grounds of public policy and for the protection of the integrity of the court. *Roark v. Roark*, 34 Ark. App. 250, 809 S.W.2d 822 (1991). Whether the parties are within the application of the maxim is primarily a question of fact. *Id.* In the present case, the evidence was in sharp dispute concerning which of the parties was primarily at fault for the breakdown of the joint custody arrangement, and we cannot say that the chancellor was required to find that appellee was the responsible party.

Finally, appellant contends that the chancellor erred in basing his finding that it would be in the children's best interests to award custody to the appellee solely on the fact that appellee was the first to quit living in a sexually illicit relationship. The immediate answer to this argument is that the record demonstrates that this was not the sole factor relied upon by the chancellor, who also took note of appellee's increased maturity, responsibility, and superior initiative on behalf of the children's best interests. In any event, extramarital cohabitation in the presence of the children has never been condoned in Arkansas, is contrary to, the public policy of promoting a stable environment for children, and may of itself constitute a material change of circumstances warranting a change of custody. *Hamilton v. Barrett, supra.* It goes without saying that this

is a significant factor in determining where the best interests of the children require them to be placed.

■ There was evidence that both parties in the present case engaged in extramarital cohabitation following their divorce. Appellee admitted that his fiancee lived with him briefly but stated that he came on his own to believe this was harmful to the children, and he and his fiancee were married soon thereafter. Appellant admitted that she cohabited with her boyfriend in the presence of the children for over ten months, that she had an illegitimate child by her boyfriend, and that she and her boyfriend were married at the courthouse the day before the custody hearing took place. She explained that, although she believed cohabitation in the presence of the children was harmful to them, she had simply been too busy to marry her boyfriend any sooner.[2] On this record, we cannot say that the chancellor erred in considering appellee's more timely and uncoerced self-correction to be indicative of superior maturity, initiative, and dedication to the best interest of the children.

Affirmed.

NEAL and VAUGHT, JJ., agree.

---

[2] Appellant testified that the marriage ceremony took approximately fifteen minutes.