Gina DELUCA *v.* Bobby STAPLETON

CA 02-144                                          84 S.W.3d 892

Court of Appeals of Arkansas
Division III
Opinion delivered September 18, 2002

---

140

*Lyons, Emerson & Cone, P.L.C.,* by: *Scott Emerson,* for appellant.

*Kincade Law Office,* by: *Ronald P. Kincade,* for appellee.

A NDREE LAYTON ROAF, Judge. Appellant Gina Deluca appeals from the trial court's denial of her petition to modify custody by allowing her to relocate with her minor children to California. The trial court also denied the petition of her ex-husband, appellee Bobby Stapleton, for change of custody. On appeal, Deluca argues that the trial court failed to properly evaluate the factors to be considered in parental-relocation cases as set forth in *Staab v. Hurst,* 44 Ark. App. 128, 868 S.W.2d 17 (1994), and that the decision is clearly erroneous. We disagree and affirm.

Deluca and Stapleton were married in 1991 and divorced in 1993. Deluca was awarded custody of the parties' two minor children. At the time of the divorce both parties lived in Calico Rock. Deluca later moved to Jonesboro and attended Arkansas State University where she received a bachelor's degree in radiography in 2000. Deluca was employed part-time as a radiology technician at a Jonesboro hospital at the time of the hearing on her petition to relocate. Stapleton worked at Boeing Aircraft, also had a part-time photography business, and lived with his wife Linda in a mobile home next door to his mother outside Calico Rock.

Deluca filed her petition to relocate in October 2000, four months after the trial court had entered an order finding her in willful contempt for violation of prior orders regarding Stapleton's visitation. In her petition to relocate, Deluca asserted that she had finished her college courses in X-ray technology and had the opportunity to earn substantially more at a job she had been offered in her home state of California. The petition was not heard until nearly a year later, on August 9, 2001. The trial judge issued a detailed letter opinion on August 16, 2001, setting out the reasons why he was denying Deluca's petition to relocate. The order was entered four months later, and Deluca timely appealed.

Deluca argues on appeal that the trial court failed to follow the factors set out in *Staab v. Hurst, supra,* that she presented overwhelming evidence on the threshold issue of whether the move would result in a real advantage to the family unit as a whole, and that the evidence weighed in her favor on all of the additional factors to be considered after she had met this threshold burden of proof.

In cases involving child custody and related matters we review the case de novo, but we do not reverse the findings of the trial court unless it is shown that they are clearly erroneous or clearly against the preponderance of the evidence. *Wagner v. Wagner,* 74 Ark. App. 135, 45 S.W.3d 852 (2001); *Presley v. Presley,* 66 Ark. App. 316, 989 S.W.2d 938 (1999). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite conviction that a mistake was committed. *Turner v. Benson,* 59 Ark. App. 108, 953 S.W.2d 596 (1997). In child-custody cases we give special deference to the trial court's position to evaluate what is in the best interests of the child. *Thompson v. Thompson,* 63 Ark. App. 89, 974 S.W.2d 494 (1998). The best interest of the child remains the ultimate objective in resolving child custody and related matters. *Staab v. Hurst, supra.*

In *Staab,* this court set forth five factors that should be considered in determining whether to allow a custodial parent to move from the state of the noncustodial parent. These factors are:

> (1) the prospective advantages of the move in terms of its likely capacity for improving the general quality of life for both the custodial parent and the children; (2) the integrity of the motives of the custodial parent in seeking the move in order to determine whether the removal is inspired primarily by the desire to defeat or frustrate visitation by the non-custodial parent; (3) whether the custodial parent is likely to comply with substitute visitation orders; (4) the integrity of the non-custodial parent's motives in resisting the removal; and (5) whether, if removal is allowed, there will be a realistic opportunity for visitation in lieu of the weekly pattern which can provide an adequate basis for preserving and fostering the parent relationship with the non-custodial parent.

*Id.*, 44 Ark. App. at 134. Before a circuit judge is to consider the *Staab* factors, the custodial parent bears the threshold burden to prove some real advantage to the children and himself or herself in the move. *Wilson v. Wilson*, 67 Ark. App. 48, 991 S.W.2d 48 (1999).

In addition to her own testimony, Deluca presented the testimony of Professor Ray Winters, Chairman of the Radiology Services Department at Arkansas State University (ASU), Mary Deluca-Elder, her sister, and the parties' children, Mandy and Travis Stapleton, ages eleven and nine. Dr. Winters testified that he was Deluca's advisor at ASU. He stated that Deluca was licensed as a radiographer in Arkansas, that she was working toward registration in mammography radiography, and that job turnover in mammography is low and opportunities for employment not readily available in central Arkansas. He further testified that demand for mammographers is higher on the east and west coasts, and that they are paid $2.50 to $3.50 more per hour than in the Arkansas region. Dr. Winters further testified that jobs were readily available in Arkansas in radiology and that Deluca could get one paying $13.00 to $15.00 per hour "anywhere in Arkansas at this time." He stated that Deluca would earn, at the outside, a dollar to two dollars more an hour if she were to be employed in mammography.

Deluca testified that she was taking additional training to qualify in the specialized area of mammography and that she was presently working part-time doing mammograms at a Jonesboro hospital. She further testified that her hours there had been "cut back" to eight per week, that she was living on unemployment, and that she also had to go on welfare and receive subsidized housing. She testified that she was unwilling to work as a general X-ray technician because it would be a "step backward" and would require her to be on call and work nights, weekends, and holidays as a new employee, and she would not have anyone to take care of her children. She stated that she wanted to move to Sacramento, California, where her sister lived, and that she had a job awaiting her in a breast imaging center working a day shift, with benefits and a $4,000 signing bonus. She further testified that her sister and her sister's husband planned to buy a house for her and the

children to live in rent-free and would also help her with babysitting. She stated that she was willing to allow Stapleton to make up for the loss of weekend visitation by increasing his summer, Christmas, and spring break visitation. Deluca admitted that she and Stapleton cannot get along, do not talk to each other, and claimed that she had not "intentionally done anything wrong" in regard to the parties' past visitation disputes.

Mary Deluca-Elder testified by deposition that she was employed with the same radiology group where Deluca would be working and was aware of an opening there for a mammographer with a salary range of $15.57 to $21.80 per hour; that she and her husband would buy a house as an investment and allow Deluca to live there rent-free, and that she would not charge her for babysitting. Mandy Stapleton testified that "I pretty much think I would like it," if she went to live in California, and Travis Stapleton testified that he wanted to spend as much time as he could with both parents, had more fun with his dad, missed him, and wished he could be with his dad all the time. After the hearing Deluca also presented a faxed letter dated August 15, 2001, from her prospective employer confirming that she had been offered a full-time position as a radiology technologist in September 2000 in a "float pool" providing coverage for absent employees, and that there are always open positions in this pool.

Bobby Stapleton testified in opposition to Deluca's petition. He stated that he and Deluca had been in court nearly every year since 1995, including a Department of Human Services (DHS) hearing. He stated that before the March 2000 contempt hearing, he was able to see the children only sporadically at best, but since then he has been able to see them every other weekend. He testified that Deluca was responsible for allegations of abuse made against him to DHS, and that if Deluca was allowed to move to California, he would not even get summer visitation without a court fight. Stapleton testified that his parents, siblings and other family members lived in and near Calico Rock, that it was a two-and-a-half hour drive one way from there to Jonesboro, and that he had not attended many of the children's extracurricular activities, in part because he feared a confrontation with Deluca.

In his letter opinion, the trial court made the following conclusions of law and findings:

> *Staab v. Hurst*, 44 Ark. App. 128, 868 S.W.2d 517 (1994) and its progeny have laid down the guidelines to be followed in this situation. Children, after the divorce of their mother and father, form a new family unit with the custodial parent. If the custodial parent seeks to move with the children to another state, the best interest of the children cannot be considered in a vacuum, but must be considered in the context of the family unit. An important inquiry is whether the proposed move is in the best interest of the custodial parent.
>
> It may be (I am unable to say) that the proposed move of the mother to California would help her. If so, and the inquiry ended there, the decision would necessarily be in the mother's favor. But it does not (and should not) end there. A determination must be made whether removal of the children to the State of California is inspired primarily by a desire by the mother to frustrate the father's visitation. Based on my experience with this case stretching back over several years, and my past knowledge that the mother has repeatedly frustrated the father's visitation, resulting in two separate contempt rulings by me against her because of such conduct, and after observing her at this most recent hearing, I am compelled to find that her motive is in large part frustration of his visitation. And even if this is not presently her motive, there is no doubt in my mind that if she were ever permitted to move to California, there is no way after that move she would comply with any substitute visitation order, no matter the wording of such order. Obviously, continuous and continuing litigation between the mother and father can only be harmful to the children. I believe I have the mother's attention while she is in Arkansas as far as obeying visitation orders, but in my opinion litigation would commence anew shortly after the move. And in view of the testimony of the children, I find it is not in their best interest to go to California. The oldest child, for instance cannot say whether she wants to go, although it might be "fun." The youngest child wants to live with his father. In my opinion, it is much better for these children to stay in Arkansas, see their father frequently, and visit their paternal grandmother and other family members.

On appeal, Deluca contends that the trial court clearly erred by stating that he was "unable to say" whether the proposed move would benefit the family unit as a whole, and this ruling must therefore be reversed. She further asserts that the evidence on each of the remaining factors to be considered weighs heavily in her favor.

We do not agree that the trial court's findings regarding whether Deluca met her threshold burden or her motives are clearly erroneous under the circumstances of this case. While Deluca presented evidence that she had a job offer in California, allegedly in her desired area of radiography, and that she had family there willing to subsidize her living expenses at least for a time, there was also extensive testimony, both in her case and by Stapleton, that she could easily obtain full-time employment in Arkansas at close to, if not the same pay as, that in California.

Secondly, the trial court clearly found Deluca to be not credible. In an exchange abstracted in Stapleton's brief, the court questioned Deluca about the delay in entering the order resulting from the March 2000 contempt hearing, which was signed only by Stapleton and his counsel. Deluca first denied that her prior attorney had sent her the order, but admitted that she had received it when shown a letter she signed acknowledging receipt of the order, and further stated that she had refused to sign the order because she did not agree with its contents. This order provided in pertinent part that Deluca was in willful contempt for violation of prior orders of the court; listed five separate provisions she had violated; awarded Stapleton extended summer visitation plus additional makeup visitation; withheld sentencing of incarceration conditioned upon Deluca's compliance with future orders; prohibited Deluca from enrolling the children in school under any name other than Stapleton, or allowing them to use any other name; and provided that there would be no denial of visitation on account of illness of the children unless documented by a medical report or based on any allegation of abuse against Stapleton unless he has been convicted in a court of law of the abuse. Deluca's petition for relocation followed closely on the heels of this con-

tempt order, and the trial court specifically found that "her (Deluca's) motive is in large part frustration of [Stapleton's] visitation."

Finally, we note that the trial court in essence stated that, regardless of whether Deluca had met her threshold burden of proving the move would result in a real advantage, his inquiry did not end there, and he went on to assess the remaining *Staab* factors as if the burden had been met. Thus, the trial court did not end his inquiry by finding that Deluca had failed at proving a real advantage, but gave her credit for having met the burden.

Deluca next argues that the evidence weighs in her favor on the remaining factors to be considered. She contends that the trial court, in assessing the likelihood of her compliance with future visitation orders, erroneously concluded that Arkansas would lose jurisdiction of the case to California if he allowed her to move. Although the trial court made remarks to this effect at the hearing, in his letter opinion, the trial court stated that if Deluca were permitted to move "there is no way that she would comply with any substituted visitation order," and "in my opinion litigation would commence anew after the move." The trial court's opinion was based on his "experience with this case stretching back over several years," and "after observing [Deluca] at this most recent hearing." The letter opinion does not address the conflict over jurisdiction raised during the hearing, or predict the outcome if such a conflict should (UCCJEA)]ensue.[1]

Deluca also argues that Stapleton's motives for resisting the move lack integrity, and were born of spite. In sup-

---

[1] The Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), which both Arkansas and California have adopted, is the exclusive method for determining the proper forum in custody disputes involving other jurisdictions. *In re C.T. v. Rodney T. et al.,* 100 Cal. App. 4th 101, 121 Cal. Rptr.2d 897 (2002). *See* Ark. Code Ann. §§ 9-19-101 to 9-19-401 (Repl. 2002); Cal. Fam. Code §§ 3400 to 3462. (West 2000). Under the UCCJEA, the Arkansas trial court would retain jurisdiction over any future custody disputes between the parties even if Deluca were permitted to relocate to California. The only exception to the trial court's continuing jurisdiction is in the event that an emergency exists, in which case California would take emergency jurisdiction to protect the child from actual or threatened mistreatment or abuse. *In re C.T., supra. See* Cal. Fam. Code § 3424.

port of this argument, she asserts that he does not attend the children's extracurricular activities or transport them to these events during his visitation, has not reimbursed her for their medical or dental bills not covered by insurance, does not regularly attend church, and lists various other alleged lapses on the part of Stapleton, which, if nothing else, reflect on the degree of acrimony between the parties. However, the testimony by Stapleton and the children presented a father and children who love each other and want to spend time with each other, and demonstrated that Stapleton has attempted to maintain a close relationship by pursuing enforcement of his regular weekend and summer visitation.

As to the final factor, Deluca contends that Stapleton could easily afford the children's travel expenses to and from California, and that she would be willing to allow him the bulk of the summer weeks plus other extra time to make up for the lost weekends. She contends that her opportunity for career advancement and a better and more comfortable lifestyle for herself and her children should not be sacrificed to maintain Stapleton's pattern of weekly visitation. The trial court did not discuss this factor in his letter opinion. However, some alternative to weekly visitation will be available in almost every case, unless the incomes of the parties are insufficient to bear this additional expense. The trial court fully set out the *Staab* factors in his letter opinion, and we cannot say that he failed to consider this final factor in reaching his decision. We further cannot say that this factor alone would outweigh the trial court's findings with respect to Deluca's motives and the likelihood of her compliance with further visitation orders.

Finally, we distinguish the cases cited by Deluca for the proposition that this court has placed great emphasis on a custodial parent's desire to relocate for career advancement. In *Friedrich v. Bevis*, 69 Ark. App. 56, 9 S.W.3d 556 (2000), we affirmed a chancellor's decision to allow a relocation to Texas where the custodial parent obtained a much higher-paying job with less travel. In *Wagner v. Wagner*, 74 Ark. App. 135, 45 S.W.3d 852 (2001), we affirmed a chancellor's decison to allow relocation to Florida

where the custodial parent had a job opportunity and would be near her mother. In *Hass v. Hass*, 74 Ark. App. 49, 44 S.W.3d 773 (2001), we reversed the chancellor's decision prohibiting the custodial parent from moving to El Dorado from Fayetteville. There the parent wanted to move in order to take advantage of an offer of a federal judicial clerkship. Finally, in *Parker v. Parker*, 75 Ark. App. 90, 55 S.W.3d 773 (2001), this court reversed the trial court's denial of relocation from Jonesboro to Little Rock where the appellant had a job offer and planned to pursue an advanced degree, and where the family had lived until 1996, noting the short distance between Jonesboro and Little Rock.

Both *Wagner* and *Friedrich* involved parties with past visitation disputes. In affirming the trial courts' decisions to allow relocation, we stated that while past problems with visitation were not alone dispositive of the question of the integrity of the custodial parent's motives for seeking to move, we would defer to the trial court to evaluate the witnesses and their testimony in this regard. Both of the cases in which this court reversed the denial of relocation involved relatively short intrastate moves, while the case before us involves a move to California. In this case, the evidence supports the findings made by the trial court regarding Deluca's motive and likelihood of compliance with future visitation orders, and, as we did in *Wagner* and *Friedrich*, we defer to the trial court in the evaluation of the witnesses and their testimony on these crucial issues.

Affirmed.

PITTMAN, J., agrees.

GRIFFEN, J., concurs.