Wayne WALKER *v.* Lesly Walker TORRES

CA 02-1381                                         118 S.W.3d 148

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered September 24, 2003

*Walters, Hamby & Verkamp*, by: *Dianna Hewitt Ladd*, for appellant.

One brief only.

Andree Layton Roaf, Judge. Wayne Walker appeals the trial court's order denying his motion for a change of custody of the parties' minor child from appellee, Lesly Walker Torres, to him. For reversal, Walker argues that because there was a material change in circumstances that warranted a change of custody, the trial court erred in failing to grant him custody of the minor child. We reverse and remand.

The parties were divorced in 1999, and Torres was granted custody of the child, Marcus, then three years of age. Walker was ordered to pay child support in the amount of $130 every two weeks. On August 10, 2000, Walker filed a petition for a contempt citation, asserting that Torres had denied him visitation and had

failed to provide him with a phone number to contact the child. He also asserted that Torres failed to maintain a proper and wholesome living environment for Marcus by cohabiting with a member of the opposite sex without the benefit of marriage and by allowing a convicted felon to babysit Marcus. Torres denied the contempt and filed a counterpetition for contempt, in which she alleged that Walker had failed to pay the correct amount of child support. The trial court denied both motions for contempt and ordered that Torres provide Marcus with a wholesome, drugfree environment. Further, Torres was prohibited from having non-family male visitors stay overnight when Marcus was present and was ordered to provide Walker with her current telephone numbers.

On March 15, 2002, Walker filed a petition seeking to pay child-support arrearages over a period of time, and asserting that Torres was in contempt for refusing to allow him visitation pursuant to the previous court order. Walker later amended his petition to request a change of custody of the parties' minor child based on a material change of circumstances and the child's best interests.

The trial court found Torres in contempt for withholding visitation but refused to impose punishment because she had allowed Walker additional visitation in lieu of the days he had missed. Further, the trial court found that although Walker had improved his situation since the time of the divorce decree, a material change of circumstances did not exist that required a change of custody; thus, the court denied Walker's petition. From that order comes this appeal.

The standard of appellate review governing custody modifications is well settled. In child-custody cases, the primary consideration is the welfare and best interests of the child involved; all other considerations are secondary. *Eaton v. Dixon*, 69 Ark. App. 9, 9 S.W.3d 535 (2000). Custody will not be modified unless it is shown that there are changed conditions demonstrating that a modification is in the best interest of the child. *Vo v. Vo*, 78 Ark. App. 134, 79 S.W.3d 388 (2002). In cases involving child custody and related matters, we review the case de novo, but we will not reverse a trial judge's findings in this regard unless they are clearly erroneous. *Deluca v. Stapleton*, 79 Ark. App. 138, 84 S.W.3d 892 (2002). Although there is evidence to support it, a finding is clearly erroneous when the reviewing court is left with the definite and

firm conviction that a mistake has been made. *Smith v. Parker*, 67 Ark. App. 221, 998 S.W.2d 1 (1999). Because the question of whether the trial court's findings are clearly erroneous turns largely on the credibility of the witnesses, we give special deference to the superior position of the trial judge to evaluate the witnesses, their testimony, and the child's best interests. *Ford v. Ford*, 347 Ark. 485, 65 S.W.3d 432 (2002).

In determining whether a change in custody is warranted, the trial judge must first determine whether there has been a material change in circumstances of the parties since the most recent custody order. *Word v. Remick*, 75 Ark. App. 390, 58 S.W.3d 422 (2001). While custody is always modifiable, in order to promote stability and continuity for the children and to discourage repeated litigation of the same issues, our courts require a more rigid standard for custody modification than for initial custody determinations. *Vo, supra.*

Walker argues on appeal that the trial court erred in determining that a material change of circumstances did not exist to warrant a change in custody. In support of this argument, Walker contends that Torres's hostility, lack of cooperation, and retaliation against him as exhibited by her withholding visitation constituted a change of circumstances supporting a change of custody. Further, he asserts that Torres's immorality and promiscuity was evident from her admission that she lived with a man to whom she was not married but who was the father of her younger child. Walker also argues that Torres's failure to remain fully employed along with her loss of a job for lying and failing to contact her employer demonstrated her irresponsibility and failure to maintain a stable home for Marcus. Finally, Walker contends that the trial judge should have considered his changed circumstances and found that the totality of the evidence constituted a material change in the circumstances.

At a hearing held on August 15, 2002, Walker testified that following the first contempt hearing he had remarried and was taking college classes at night. Walker explained that his support arrearages accrued when he changed jobs and his new employer failed to immediately withhold child-support payments. He further claimed that he offered to pay Torres an extra $50 per month toward the arrearages until the past due amount was paid, but that after Torres insisted on full payment, Walker contacted his attorney and continued to pay $50 toward the arrearage. Walker also

stated that Torres had not kept him informed of her current telephone number and that she denied him the court-ordered visitation in January, February, and March 2002.

After noting that a change of custody would result in the child attending a different school, Walker testified that the child was familiar with the new school system, having gone to the gymnasium at the school and played with many children his own age from that neighborhood. Also, Walker stated that both his wife and his mother teach at that school. Walker also noted that he offered to pay for the child to participate in sports, but that Torres has failed to enroll the child in a program. Further, Walker stated that he had noticed a change in the child's behavior and had heard the child use obscene language on a couple of occasions.

Nicki Petrucci, the child's kindergarten teacher, acknowledged that Marcus was briefly suspended during the school year for a couple of behavioral problems, including the use of profanity, and that Marcus reported that he heard the words from Torres's boyfriend, Aaron Richardson. However, she further testified that his behavior was not unusual and that he had tested at or considerably above grade level in all areas by the end of the year. Petrucci also stated that after one of the incidents, Torres met with her and the principal regarding the course of disciplinary action and that Torres was cooperative in keeping on top of Marcus's education. Torres testified that Marcus had perfect attendance at school for almost three semesters and that he had only missed four days of school the entire year.

Torres testified that she was currently living with her parents but that the situation was only temporary. Torres further stated that since the last hearing in 2000, she had left one job during a difficult pregnancy, had left another job without notice, and had been involuntarily dismissed by the National Guard. Torres was terminated from yet another job for being untruthful about the reason for one of her absences. Torres also admitted that she was not married to Aaron Richardson, that he was the father of her younger child, Luke, and that on several occasions, she and Marcus had spent the night at Richardson's residence where Marcus slept on the floor or on a couch. Torres's sister testified that Richardson had assaulted her in the presence of Marcus.

In its order denying the motion for change of custody, the trial court found that while Torres had withheld visitation from Walker during February and March 2002, she had, prior to the

hearing, "more than made up with additional visitation." In ruling on the change of custody from the bench, the trial court stated that there would be "no question in my mind" that the child should live with Walker if the court were first determining custody, but that the change of circumstances on Walker's part did not "count." The court further observed that Torres had a child without benefit of a stable home or stable marriage, had bounced from job to job, had not been truthful with her employers, and was continuing to get fired and was quitting jobs. The trial court further stated that Torres "had not changed" and continued to do the same things and that, while he did not disbelieve that the violent incident and profanity occurred with regard to Torres's boyfriend, there had not been a change of circumstance sufficient to change custody.

In his written order, the trial court stated:

> [I]f this matter was for an original determination of custody and based upon the facts and information presented the custody would be placed with the defendant father. However, this is on a Motion for Change of Custody and the defendant is obligated to show a material change of circumstances occurring as to the care of the child and it is in the best interest of the child to change custody. The defendant [Appellant] certainly has improved his situation since the divorce, is purchasing a home, has remarried and is seeking to improve himself with additional education. Notwithstanding the same, the plaintiff mother has been active in the education of the child and has complied with the school officials and teachers. The child is at or above the educational levels the child should be. The court would hope the plaintiff will try to gain stability and try to make a choice for her future and improve her situation. However the proof is not such to constitute a material change in circumstances....

In a recent opinion, this court addressed the issue of a material change in circumstances based upon a major change in circumstances on the part of the noncustodial parent coupled with a minor change in the circumstances of the custodial parent. In *Mason v. Mason*, 82 Ark. App. 133, 111 S.W.3d 855 (May 7, 2003), this court affirmed the decision of the trial court to change custody based on "radical and positive change" in the noncustodial parent's circumstances coupled with "evidence of a further decline in [the custodial parent's] already dismal circumstances."

In the present case, Walker, as the noncustodial parent, has made a positive change in his circumstances. Walker presented testimony that he was taking business classes, had remarried, and had purchased a home since the time of the original decree. Walker further testified that Torres had violated the decree by denying him visitation, failing to provide him with a phone number to contact the child, and by failing to maintain a wholesome, stable living environment for the child. The evidence established that Torres was temporarily residing with her parents and that she had left a number of jobs under adverse circumstances since the time of the original decree. Torres also had an ongoing relationship with a man who was not a positive influence on the minor child, and the trial court expressly did not discredit the testimony concerning the adverse nature of his influence. In *Hamilton v. Barrett*, 337 Ark. 460, 989 S.W.2d 520 (1999), the supreme court noted that a noncustodial parent's remarriage is a matter that can be considered by the trial court in determining whether there has been a change in circumstances. Thus, the trial court was not correct in stating that Walker's positive changes did not "count." Moreover, as in *Mason, supra*, the trial court here stated that there was "no question" in his mind that it would be in the child's best interest for Walker to be awarded custody. However, we are not unmindful that over a year has now passed since the custody hearing was held and circumstances can and do change. Accordingly, we reverse and remand to allow the trial court to conduct such further proceedings as may be necessary, and to consider the circumstances of this case in light of our decision in *Mason, supra*, which was rendered after the order appealed from in the instant case.

Reversed and remanded.

STROUD, C.J., BIRD and PITTMAN, JJ., agree.

HART and BAKER, JJ., dissent.

KAREN R. BAKER, Judge, dissenting. I dissent from the majority's opinion because it directly contradicts all precedent in holding that the trial court in this case incorrectly stated the law. In ruling from the bench and in the written order, the trial court correctly stated what must be proven in order to grant a change of custody. The trial court stated from the bench, in relevant part:

We've got on the other hand, a man who is now in a stable marriage, able to provide a stable home, a good home, not living with parents, doesn't have another child, that I'm aware of — with somebody else. Like I said, he's grown. He's going to school. He's trying to better himself. And we have someone who's on unemployment and continuing to get fired and quit jobs.

Unfortunately, I don't get to make that determination. That determination was made when this divorce was finalized. The standard I have to show is that there has been a material change of circumstance. The material change of circumstance, Mr. Walker, is not on your part that counts, although I'm commending you for what you have done and how you've grown. It's got to be a change of circumstance on the part of the custodial parent, and I guess what I'm complaining is that there has been no change of circumstance. She hasn't changed and continues to do the same type of thing.

And on the other hand, while I don't think where Marcus is living is the best place for Marcus, he's not suffering from it. She is interested in his education. She goes to the parent/teacher conferences. She takes care of the child. You know, he's — he's much better than some of them I see come through here. He seems like a very well-adjusted young man. In talking with him, he has — he loves both of you very much. You know, he has no complaints.

But what I'm saying is there's to be no change of custody, because there's not been that change of circumstance sufficient.

The trial court's ruling correctly articulates the rule, as our supreme court has clearly stated and repeatedly held, that when seeking a change of custody the petitioner has the burden of showing a material change of circumstances has occurred since the initial award of custody. In determining this threshold issue, a change of circumstances of the noncustodial parent is not sufficient to justify modifying custody. *Lloyd v. Butts*, 343 Ark. 620, 626, 37 S.W.3d 603, 607 (2001); *see also Campbell v. Campbell*, 336 Ark. 379, 985 S.W.2d 724 (1999); *Jones v. Jones*, 328 Ark. 97, 940 S.W.2d 881 (1997).

In this case, far from misstating the law as the majority asserts, the trial court's ruling actually echoed the holding in *Lloyd*, where the supreme court recognized the applicable rule, stating:

Certainly to [the noncustodial parents'] credit, they have rectified their lives, and the positive changes they made were acknowledged by the trial court's findings . . . . However, our court has also adopted the majority rule that a change of circumstances of the *noncustodial* parent is not sufficient to justify modifying custody. *Lloyd v. Butts,* 343 Ark at 625-26, 37 S.W.3d at 607 (emphasis in original).

The majority attempts to circumvent this threshold issue by citing *Mason v. Mason,* 82 Ark. App. 133, 111 S.W.3d 855 (2003) for the proposition that a trial court may change custody based on "radical and positive change" in the noncustodial parent's circumstances coupled with "evidence of a further decline in [the custodial parent's] already dismal circumstances." In *Mason,* the trial court specifically found that the custodial parent's circumstances had deteriorated from the already dismal existence that had disturbed the judge at the time that the initial custody determination was made and further found that there were no good prospects for the welfare of the children if they remained with the custodial parent.[1] We upheld the trial court's change of custody in this circumstance, repeating the standard that we know of no cases in which the superior position, ability, and opportunity to observe the parties carry as great a weight as those involving children. *Mason, supra,* citing *Watts v. Watts,* 17 Ark. App. 253, 707 S.W.2d 177 (1986).

The holding in *Mason* has no application to this case. Here, the trial court specifically found that there was no change of circumstances of the custodial parent's situation, and further found that the child had not suffered while in the custodial parent's care. Additionally, while the majority's opinion notes that the noncustodial parent "has made a positive change in his circumstances" by remarrying, signing up to take business classes, and purchasing a home, the opinion fails to cite any authority for the proposition that these acts are sufficient to support a modification of custody. The majority's reliance on *Hamilton v. Barrett,* 337 Ark. 460, 989 S.W.2d 520 (1999) is even more perplexing since the court in

---

[1] I joined the majority in *Mason,* because the holding in that case rested on the premise that even a slight decline in the custodial parent's circumstances could be a material change when the custodian's initial circumstances were so "dismal." Thus *Mason,* did not change the requirement that there must in fact be a material change in the custodial parent's circumstances before an initial custody award can be relitigated.

*Hamilton* specifically stated that "the holding in *Jones* merely underscores the rule that changes in circumstances of the noncustodial parent, including a claim of improved life because of remarriage, were not alone sufficient to modify an order of custody." *Hamilton*, 337 Ark. at 467, 989 S.W.2d at 524, *see also Middleton v. Middleton*, 83 Ark. App. 7, 113 S.W.3d 625 (August 27, 2003).

Unlike this case, in *Hamilton* the trial court was faced with a petition to modify joint custody. Joint custody or equally divided custody of minor children is not favored in Arkansas. *Thompson v. Thompson*, 63 Ark. App. 89, 974 S.W.2d 494 (1998). The mutual ability of the parties to cooperate in reaching shared decisions in matters affecting the child's welfare is a crucial factor bearing on the propriety of an award of joint custody, and such an award is reversible error where cooperation between the parents is lacking. *See Hansen v. Hansen*, 11 Ark. App. 104, 666 S.W.2d 726 (1984). When the parties have fallen into such discord that they are unable to cooperate in sharing the physical care of the children, this constitutes a material change in circumstances affecting the children's best interest. *Word v. Remick*, 75 Ark. App. 390, 58 S.W.3d 422 (2001); *see also Thompson, supra.*

The trial court in *Hamilton* had failed to make a specific finding of a material change in circumstances; however, in response to the mother's directed-verdict motion, the judge concluded that the mother's marriage and the birth of a child born to the father in his remarriage satisfied the requirement of a substantial change. The supreme court held that where the trial court "fails to make findings of fact about a change in circumstances, [the appellate court] under its *de novo* review, may nonetheless conclude that there was sufficient evidence from which the [trial court] *could* have found a change in circumstances." *Hamilton*, 337 Ark. at 466, 989 S.W.2d at 523 (emphasis in original). The supreme court emphasized that the evidence demonstrated that the mother violated the parties' custody and settlement order, while there was no evidence that the father similarly violated the parties' agreement. The opinion merely noted that *Jones* was not intended to prohibit the trial court from ever considering the event of a noncustodial parent's remarriage as a change in circumstances affecting the best interest of the children, and then applied the fact that the mother had remarried in conjunction with the mother's violation of court orders to support the trial court's finding of a material change of circumstances. *Hamilton* in no way stands for the

proposition that changes on the part of the noncustodial parent alone are sufficient to modify custody, rather it reiterates that the rule is just the opposite. The trial court in this case did not fail to make a specific finding as to a change of circumstance; on the contrary, the trial court specifically found no change on the part of the custodial parent.

Nothing in either *Hamilton* or *Mason* changes the clear standard that a change of circumstances of the *noncustodial* parent is not sufficient to justify modifying custody. The trial court in this case did not misstate the law. Further, the record does not indicate that the trial court clearly erred in finding that appellant failed to prove a change of circumstance on the part of the custodial parent and the majority does not so hold.[2] We do not reverse a trial court's finding regarding a change of circumstances unless it is clearly erroneous. *Vo v. Vo*, 78 Ark. App. 134, 79 S.W.3d 388 (2002). Accordingly, this case should be affirmed, and I must respectfully dissent.

HART, J., joins.

---

[2] It is impossible to discern from the majority's opinion what action they expect the trial court to take on remand, since in order to reach a different result applying our holding in *Mason* the trial judge would have to find his own previous findings of fact to be clearly erroneous.