Nina Lea ALPHIN (Surber)  *v.*  David Paul ALPHIN

CA 04-444                                        204 S.W.3d 103

Court of Appeals of Arkansas
Opinion delivered February 23, 2005

*James M. Pratt, Jr.*, for appellant.

*Ronald L. Griggs*, for appellee.

Robert J. Gladwin, Judge. Nina Alphin (Surber) and Paul Alphin were divorced in August 1998, and the Union County Circuit Court awarded joint custody of their daughter, M.A., born January 27, 1998, to the parties and placed primary physical custody with appellant. On January 7, 2003, appellee filed a petition for modification of the decree, alleging that a "substantial change of circumstances" warranted awarding sole custody to him. The trial court agreed and changed custody of M.A., placing her with appellee. On appeal, appellant argues that the trial court erred in modifying the decree and awarding custody to appellee. We affirm.

At a hearing held on September 5, 2003, appellant testified that at the time of her divorce from appellee, she was living in Houston, Texas, with her boyfriend, Rob Stephens. When they broke up, she returned to El Dorado, Arkansas, and moved back in with appellee. They lived together from November 1999 to March 2001, during which time they attempted to reconcile; however, the arrangement did not lead to reconciliation. Appellant then moved to Illinois after a transfer by her employer, Wal-Mart Stores, Inc., and planned to live with her sister until she could find a place of her own. Appellant eventually found her own place in March 2002. Her then-boyfriend and current husband, Todd

Surber, moved in with appellant and M.A. in July 2002. According to her testimony, appellant believed it was okay to live with Mr. Surber out of wedlock in the presence of M.A. Appellant also testified that she and Mr. Surber had planned to be married at the end of the month but that they had moved the date up and married two days before the hearing because they knew the court would frown upon their not being married. Appellant stated that she thought it was appropriate for Mr. Surber to be referred to as "Daddy" because he had taken care of M.A. for the previous three years.

As for her and her new husband's work schedules, appellant stated that Mr. Surber is a police officer who works in rotating shifts, while she is a waitress at a bar and grill. Appellant testified that her hours from week to week are never the same but that she works three nights per week. She stated that, while she is working, if Mr. Surber is not available, M.A. stays with her grandmother or is left with babysitters. Appellant further testified that she has two children with her first husband and that he has custody of them. Appellant testified that it had been two years since she had visited with her children because her ex-husband would not let her see them and she could not afford to take legal action to enforce visitation. She testified that appellee is a good father but that she is a good mother and did not want to lose M.A. She stated that appellee was not supporting M.A. financially and was not paying for half of her medical bills. Appellant stated that, after she filed a petition for child support the previous fall, she had received assistance from appellee but that he then filed for custody of M.A.

Sean Zoerner, appellant's ex-husband, testified that it had been two years and eight months since appellant had spoken to her children. Mr. Zoerner stated that appellant had sent only a few letters that year and that she had not sent money to the children at Christmas or on their birthdays since 1998. Finally, Mr. Zoerner testified that their son did not want to see appellant but that their daughter did.

Michelle Alphin, appellee's current wife, testified that she has custody of her two children from a previous marriage. She testified that her work schedule allowed her to pick up the children from school every day. She stated that she and appellee did not live together before they were married but that she was three months' pregnant when they got married. According to Mrs. Alphin, appellant's filing a petition for child support was a factor in appellee's decision to seek custody of M.A.

Appellee testified that, although he never voiced any objection to appellant's living arrangements, he did have a problem with it. Appellee stated that he sought custody because he had difficulty seeing M.A. and because appellant moved around so often, but he denied that he took the current action because of appellant's petition for child support. He admitted that he had not paid any of M.A.'s medical bills even though he was supposed to pay half of what the insurance did not pay. Appellee testified that he did not believe appellant was setting a good example living out of wedlock but conceded that he and appellant had lived together before they were married and after they divorced. Appellee stated that he got off work at 3:30 p.m. each day and that either he or Mrs. Alphin was home by the time M.A. got out of school.

Todd Surber testified that the timing of his recent marriage to appellant was affected by the current hearing regarding custody. He stated that their not being married to each other would probably not look good. Mr. Surber testified that he did not believe it was morally wrong for them to live together out of wedlock and that he did not think that it set a bad example for M.A. He further testified that he did not care what other people thought but that he and appellant knew the fact that they had married would please the judge.

In his order filed September 25, 2003, the trial court noted that appellant had readily admitted cohabiting with the opposite sex and saw nothing wrong with it. The court found that appellant's recent marriage to Mr. Surber was a "ruse" in that both appellant and Mr. Surber testified that they got married because they thought it would look good. The court pointed out that all Arkansas courts have held that cohabitation without the benefit of marriage is an illicit sexual relationship. The court further found that appellant's conduct in that regard was a sufficient change of circumstances that demonstrated that a modification of custody would be in M.A.'s best interest. The trial court concluded that, "in viewing the lifestyles of the parties, their stability and, equally important, their availability," M.A.'s best interest would be served by placing her with appellee, subject to reasonable and seasonable visitation by appellant.

Although the trial court retains continuing power over the matter of child custody after the initial award, the original decree is a final adjudication of the proper person to have care and custody of the child. *Watts v. Watts*, 17 Ark. App. 253, 707 S.W.2d 777 (1986). Before that order can be changed, there must be proof

of material facts which were unknown to the court at that time, or proof that the conditions have so materially changed as to warrant modification and that the best interest of the child requires it. *Id.* The burden of proving such a change is on the party seeking the modification. *Id.* The primary consideration is the best interest and welfare of the child, and all other considerations are secondary. *Id.* Custody awards are not made or changed to punish or reward or gratify the desires of either parent. *Id.*

In child-custody cases, we review the evidence *de novo*, but we do not reverse the findings of the trial court unless it is shown that they are clearly erroneous. *See Deluca v. Stapleton*, 79 Ark. App. 138, 84 S.W.3d 892 (2002). A finding is clearly erroneous, when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id.* Because the question of whether the trial court's findings are clearly erroneous turns largely on the credibility of witnesses, we give special deference to the superior position of the trial judge to evaluate the witnesses, their testimony, and the child's best interest. *Ford v. Ford*, 347 Ark. 485, 65 S.W.3d 432 (2002). There are no cases in which the superior position, ability, and opportunity of the trial judge to observe the parties carry as great a weight as those involving minor children. *See Vo v. Vo*, 78 Ark. App. 134, 79 S.W.3d 388 (2002).

On appeal, appellant points out that appellee never voiced any objection to her living arrangements until he was coached by his attorney at trial. She notes that appellee admitted that she loved M.A., that he had no problems with Mr. Surber, and that he saw no signs of neglect. Appellant argues that there was no evidence that M.A. had been harmed by living in three different states. She further contends that her living arrangement with Mr. Surber had been cured by their lawful marriage. Finally, appellant argues that the trial judge's decision was not based on any testimony at the hearing, was inconsistent with Arkansas law, and would open the floodgate to thousands of new custody orders.

Extramarital cohabitation in the presence of a child has never been condoned in Arkansas, is contrary to the public policy of promoting a stable environment for children, and may of itself constitute a material change of circumstances warranting a change of custody. *Word v. Remick*, 75 Ark. App. 390, 58 S.W.3d 422 (2001), *citing Hamilton v. Barrett*, 337 Ark. 460, 989 S.W.2d 520

(1999). Although we may not agree with the trial judge's characterization of appellant's marriage as "a ruse," we nevertheless find no error in the judge's decision. The case law clearly provides that cohabitation without the benefit of marriage may be regarded as a material change of circumstances. Moreover, it is an important factor when considering what is in the best interest of the child. Here, the trial judge also considered the parties' lifestyles, stability, and availability. We are simply not left with a definite and firm conviction that a mistake has been made under the facts of this case.

Affirmed.

ROBBINS, NEAL, and VAUGHT, JJ., agree.

BAKER, J., dissents.

HART, J., dissents.

JOSEPHINE LINKER HART, Judge, dissenting. I agree with Judge Baker that this case should be reversed; however, my disagreement is not based on the change-of-circumstances issue. Here, the appellant has introduced another adult into her home, and, whether by benefit of clergy or not, that should always be a consideration in the determination of whether a material change of circumstances has occurred since the entry of the prior order. Where I see the problem in this case is that the trial court apparently ignored the fact that under *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003), the supreme court announced a *presumption* in favor of relocation for custodial parents with primary custody.

Here, there were no findings that the non-custodial father had overcome the presumption in favor of moving, and I submit that no such findings could issue from this record. The order instead only criticizes appellant's lifestyle (cohabitation) and "instability." As far as cohabitation is concerned, I cannot see that either party has staked a claim to the moral high ground — the record reflects that the appellee arranged to marry his paramour when she was three months' pregnant. Regarding appellant's so-called "instability," appellant's recent marriage cannot possibly be characterized as anything other than an effort to make her life *more* stable.

No doubt the trial judge was personally offended by appellant's conduct. We should not similarly indulge ourselves. Here

the trial judge blatantly circumvented our supreme court's clear direction in *Hollandsworth*, and we let that decision stand.

I respectfully dissent.

K AREN R. BAKER, Judge, dissenting. The trial court changed custody of the parties' minor daughter from the mother to the father stating that cohabitating constitutes a change of circumstances in this State and that the mother's relationship with the man she ultimately married was a sufficient change of circumstances. While extramarital cohabitation in the presence of a child *may* constitute a material change in circumstances warranting a change in custody, neither cohabitation nor remarriage *requires* a court to find a material change of circumstances.[1]

Determining whether there has been a change of circumstances that materially affects the children's best interest requires a full consideration of the circumstances that existed when the last custody order was entered in comparison to the circumstances at the time the change of custody is considered. A party seeking to modify custody must prove that a material change of circumstances has occurred since the last order of custody or that material facts existed at the time of the decree that were unknown to the court.[2] Custody will not be modified unless it is shown that there are changed conditions demonstrating that a modification is in the best interest of the child.[3] The trial court's findings in this regard will not be reversed unless they are clearly erroneous.[4] While custody is always modifiable, appellate courts require a more rigid standard for custody modification than for initial custody determinations in order to promote stability and continuity for the children and to discourage repeated litigation of the same issues.[5] There are no cases in which the superior position, ability, and opportunity of the trial judge to observe the parties carries a greater weight than those

---

[1] *See, e.g., Hamilton v. Barrett,* 337 Ark. 460, 989 S.W.2d 520 (1999); *Word v. Remick,* 75 Ark.App. 390, 58 S.W.3d 422 (2001). *See also Jones v. Jones,* 326 Ark. 481, 491, 931 S.W.2d 767, 772 (1996) (remarriage of noncustodial parent not alone sufficient to find change of circumstances).

[2] *Carver v. May,* 81 Ark.App. 292, 101 S.W.3d 256 (2003).

[3] *Vo v. Vo,* 78 Ark.App. 134, 79 S.W.3d 388 (2002).

[4] *Id.*

[5] *Id.*

involving the custody of minor children, and our deference to the trial judge in matters of credibility is correspondingly greater in such cases.[6]

Given that the court originally placed custody of this child with the mother who was at that time cohabitating with a man to whom she was not married, the sole fact that she cohabitated with her husband prior to their marriage cannot constitute a material change of circumstances justifying a modification of custody. Furthermore, the facts do not supporting a finding that a material change of circumstances has occurred since the original custody order was entered. Therefore, this case should be reversed.

In *Jones v. Jones*, 326 Ark.481, 931 S.W. 2d 767 (1996), the noncustodial parent remarried and filed for a change of custody of the parties' children, citing, in part, his subsequent remarriage. *Id.* The *Jones* court held that remarriage alone was not a sufficient reason to change custody. The court also stated that because the father was aware of the alleged change in circumstances at the time of the custody agreement, he could not use those changes as grounds to modify custody. *Id.* In *Hamilton v. Barrett, supra*, the supreme court noted its holding in *Jones,* merely underscored the rule that changes in circumstances of the non-custodial parent, including a claim of improved life because of remarriage, are not alone sufficient to modify an order of custody. Moreover, this court has refused to modify custody merely because one parent has more resources or income.[7]

In this case, the trial judge did not rely on the father's remarriage as a change in circumstances, and properly so. Thus, the only fact left for the trial judge to rely upon as a change of circumstance was that the mother cohabitated with her husband prior to marrying him.[8] This same mother was cohabitating with a man not her husband when the court initially awarded her custody. She later cohabitated with the appellee for a period of time following the divorce. Apparently, appellee did not object to cohabitation without benefit of marriage at that time. In addition,

---

[6] *Id.*

[7] *Malone v. Malone,* 4 Ark.App. 366, 631 S.W.2d 318 (1982).

[8] Nothing in the record justifies the finding by the court that appellant's marriage was a ruse. Although appellant freely admitted that the marriage date was moved up because of the pending custody hearing, there is nothing to indicate the marriage was a sham or an attempt to deceive the court.

since at the time of appellee's remarriage to his present wife she was several months pregnant with his child, it seems that appellee does not object to a sexual relationship predating the marriage. The appellee does not deny that he sought custody of his daughter only after he was required to pay court ordered child support. In fact, his new wife testified that being forced to pay support was what prompted appellee to seek custody of his daughter.

The majority affirms the trial court's changing custody in this case solely because the mother cohabited with her husband prior to marrying him.[9] The holding of this case demonstrates how this State, through its courts, continues to sanction sexual discrimination against women by applying a double standard with the force of law. In this case, the father cohabited with appellant following their divorce. He also cohabited with his present wife prior to their marriage. The only difference between the behaviors of the parties, concerning cohabitation without benefit of marriage, is that when the original custody determination was made the mother was cohabiting with a man to whom she was not married but the father was not. Thus the evidence of a change of circumstance concerning cohabitation, after the original custody order was entered, demonstrates that both parties engaged in it, first with each other and then with the person they ultimately married.

The majority chooses to ignore the fact that there could be no change of circumstance on these facts because when the court originally awarded custody to the mother she was cohabiting with a man to whom she was not married. They then justify the application of a double standard to the conduct of the parties by saying that the reason the mother's conduct supports a change of custody is that the mother was the custodial parent when she cohabited with her future husband; thus her conduct occurred in the presence of the child. Of course, no one alleges and the mother flatly denies that she and the step-father engaged in sexual acts when the child was physically present.

Nonetheless, the purported reason for the distinction between the mother's conduct and the conduct of appellee is that the child, who in this case was less than school age, will somehow

---

[9] In reaching the conclusion that cohabitation by the custodial parent standing alone can be a change of circumstances justifying a modification of custody, the majortiy relies on cases where the original divorce decree and custody order specifically prohibited cohabitation in the presence of the children. No such directive was contained in the divorce decree in this case.

"know" that illicit sexual conduct occurred between her mother and step-father before their marriage, thus causing the child's morals to erode. Even if this were a valid distinction, there is just as great a danger that such an observant and intuitive child might also notice that the arrival of her step-sibling followed rather quickly upon her father's remarriage. Furthermore, I have been unable to find a single case where a noncustodial mother, after cohabitating with various men following a divorce, used the custodial father's identical conduct as a changed circumstance to justify relitigation of custody.

Societal mores change.[10] When our courts first used language regarding morality and cohabitation without the benefit of marriage in relation to custody, engaging in sexual acts outside of marriage was a criminal act.[11] In consideration of this fact, we should not blindly follow such cases. This is especially true where the conduct complained of was occurring at the time the previous custody order was entered, both parties have engaged in the same or similar conduct, and where the court's previous orders did not proscribe the conduct. Our law should not be an unspoken code that bases custody decisions upon the courts monitoring a woman's sexual activity, a premise which directly contradicts our holdings in alimony cases.[12]

Accordingly, I dissent.

---

[10] *See Jegley v. Picado*, 349 Ark. 600, 80 S.W. 3d 332 (2002): "Societal mores change. Thirty years ago I daresay most religious denominations would have supported the existence of the sodomy statute or something akin to it. Today, five religious denominations have filed an *amicus* brief in this case challenging the statute's constitutionality. The unmistakable trend, both nationally and in Arkansas, is to curb government intrusions at the threshold of one's door and most definitely at the threshold of one's bedroom." 349 Ark. at 641, 80 S.W.3d at 356 (Brown, J., concurring).

[11] *See* Ark. Stat. ___ (repealed ___). *See also McClure v. McClure*, 205 Ark. 1032, 172 S.W.2d 243 (1943) (discussing the definition of cohabitation and the criminal nature of cohabitation as proscribed by law). *See also Turney v. State*, 60 Ark. 259, 29 S.W. 893 (1895) (explaining that one night of intimate relations while traveling does not violate criminal statute against cohabitation).

[12] *See Gibson v. Gibson*, 87 Ark.App. 62, 185 S.W.3d 122 (2004), and cases cited therein.