Cite as 2020 Ark. App. 111

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-19-273

| | |
|---|---|
| | **Opinion Delivered:** February 12, 2020 |
| MELISSA BRAY (now BARNES)<br>APPELLANT | APPEAL FROM THE SALINE COUNTY CIRCUIT COURT [NO. 63DR-14-167] |
| V. | |
| DEVIN BRAY<br>APPELLEE | HONORABLE BARBARA WEBB, JUDGE |
| | AFFIRMED IN PART; REVERSED IN PART |

## WAYMOND M. BROWN, Judge

Appellant Melissa Bray (now Barnes) appeals the Saline County Circuit Court's November 30, 2018 order modifying her visitation with her son, R.B. The court found that there had been a material change in circumstances to warrant the change in appellant's visitation schedule and that the modification was in the child's best interest. Appellant argues that the court erred by not granting her custody of R.B. and that the modification was in error. We affirm the court's custody decision; however, we reverse the court's modification of visitation.[1]

---

[1]This is the second time this case has been before us. We initially remanded to settle and supplement the record and ordered a supplemental addendum. *See Bray v. Bray*, 2019 Ark. App. 422.

The parties were married on April 2, 2011. During their marriage, one child, R.B., was born. The parties were divorced by a decree entered on May 1, 2013. According to the decree, the parties were to have joint custody of R.B. with appellee serving as the primary custodian. Appellant was granted weekend custody of R.B. from Friday to Monday morning of each week. Over the years, several motions for change of custody and contempt were filed by the parties. On May 26, 2017, appellee filed a motion for contempt, and appellant filed a response on July 13 essentially denying the material allegations in appellee's motion. The court entered an order on October 17 stating that the parties had come to a partial agreement and that based on that agreement, appellee would continue to be the primary custodian and appellant would have physical custody of the child three weekends out of the month, with appellee having the child every third and fifth weekend of the month. Appellant's weekend custody would begin at 6:30 p.m. on Friday and end at 3:30 p.m. on Sunday.

Seven months later, on May 16, 2018, appellant filed a verified motion to change custody alleging that there was a substantial change in circumstances. The motion listed the following as substantial changes in circumstances:

> a. That the Plaintiff has recently moved back with his wife after living with his girlfriend for about a month, and alternates between living with his present wife and another girlfriend.
>
> b. That within days thereafter, the Plaintiff had moved back in with his girlfriend. To the best of the present knowledge of the Defendant, Plaintiff currently resides with the girlfriend. Though the uncertainty proves his instability.
>
> c. That the Plaintiff is presently not working nor substantially employed. He has had two jobs in the past several weeks, one of which he lost and the second of which he voluntarily walked out on. It is of the belief of the Plaintiff [sic] that the

2

reason for the sudden walk out on the second job was because of Plaintiff's wife's urging.

      d. That the Plaintiff has given inappropriate ultimatums to the minor child, six years old, of which "new parent" he would rather live with; giving him "the choice" to live with either the girlfriend or the present wife.

      e. That when the Plaintiff moved in with his girlfriend, while still married, the minor child moved with him–resulting in a change of school districts.

      f. This further has frustrated the ability of the minor child to attend Therapy.

      g. That the minor child's state has substantially worsened. He has been more prone to lying, acting out, wetting his pants, and is generally confused and upset regarding the change of people he lives with. The child has referred to both the girlfriend and the present wife as someone that the Plaintiff is "married to."

Appellee filed a response on June 15, 2018, denying the material allegations and maintaining that there were no significant changes in circumstances to justify a change of custody and it was not in the child's best interest. He also stated, "The problems referred to by Defendant in her motion have been resolved and Plaintiff is absolutely the best parent to have custody of the parties' child." He filed a second countermotion on October 15 seeking to have appellant's visitation changed to the standard two-weekend-visitation schedule so that he could also have two weekends with the child each month. Appellant responded on October 19, asking that the motion be denied and asserting that appellee had failed to plead that a change in visitation was in the child's best interest.

The court held a hearing on the motions on October 23. Appellee testified that he moved in with Jessica Lay, his girlfriend at the time, around April 1. He said that there were a couple of days he tried to reconcile with his wife, Megan Bray, but he continued to stay with Jessica until June. He stated that he moved back with his wife and remained there until he moved into his own apartment at the end of July. He admitted that he had moved

3

about five times—between three separate homes—in a short period of time. He stated that R.B. was with him during all the moves. He also said that R.B. had to change school districts once. He testified to having fourteen affairs on Megan in the past five years; however, he said that Jessica was the only girlfriend who had met R.B.

Appellee stated that he had changed jobs approximately four times since the last order was entered. He said that he left Covington at his wife's request because Jessica worked there. He worked a while at a temporary service while trying to find full-time employment. He subsequently started working at Greenhurst but left it to go back to Covington in July where he has remained. He testified that he and Megan supported R.B. financially when they were together. He said that Jessica sometimes gave him money for "things like gas every now and then." Appellee testified that in total, he was unemployed for about two to three weeks; however, he said that during that time, he had enough money saved up to pay his bills and "carry everything over." He stated that there was an incident in which R.B. had run out of his medication at school, and he and Megan asked if "it was okay, to ensure that he continued to have a good day, for him to have our other son's medication because it was the same."

On cross-examination, appellee stated that he regrets being unfaithful to Megan and he is no longer that person. He said that he is currently active in church and has two mentors he can turn to for advice and help. He testified that he gained temporary custody of R.B. when R.B. was thirteen months old. He said that he became R.B.'s custodial parent when R.B. was eighteen months old and had remained as such for six years. He

4

stated that R.B. is on the honor roll in school, had almost tested out of speech therapy, and had been progressing since kindergarten.

Megan's testimony corroborated appellee's testimony regarding his infidelity, number of moves, and job changes. She admitted she and appellee had fights but insisted that the children were not present during these times.

On cross-examination, Megan stated that she is hopeful that her marriage to appellee could be saved. She said that appellee seems to be sincere about changing, and he has some "pretty staunch male friends" at church. She testified that appellee is a good father and loves R.B. with all his heart. She also said that R.B. loves appellee. She stated that appellee "would like" for R.B. to be involved in sports, such as soccer, baseball, and basketball, but appellant had R.B. three weekends per month, resulting in R.B. "only able to participate in one game out of the month." She testified that appellant's husband has spanked R.B. with a belt.

Jessica testified that she is appellee's ex-girlfriend, and they had dated about six months. She said that appellee moved in with her twice, first around April or May and then a second time during the summer for a couple of weeks. She stated that R.B. was with appellee during these moves. She said that although she feels like appellee has R.B.'s best interest at heart, she sometimes feels that he "puts his personal interests in women over what's best for [R.B.]."

On cross-examination, Jessica stated that appellee is a good father who is involved with "whatever activities there are." She also said that she believes R.B. loves appellee.

Appellant testified that she filed the motion because she is concerned with appellee's instability and R.B.'s behavior. She said that R.B.'s behavior "seems like it's getting more out of control. I've noticed it's hard to take him places sometimes. He tries to run off. . . . He says no constantly. . . . He tells a lot of stories." She stated that it is her understanding that R.B. has been having behavioral problems in school also. She denied having any knowledge of R.B. being on an IEP. She said that appellee told her that R.B. had tested out of speech therapy and she learned at the hearing that he is still taking it. She stated that when she and appellee divorced, they agreed to joint custody. She testified that she married Tommy Barnes over a year ago and denied that they had separated. She said that appellee is unstable; he and Megan had both moved in and out of their home; he and Megan both filed for divorce; he has had "a lot of affairs"; and he has had multiple jobs. She stated that appellee is a bad father, and as a result of all of this, R.B. acts out. She testified that she is currently a stay-at-home mother and Tommy's job pays all their bills. She said that her son, B., used to have behavioral problems at school but the problems got under control when he was placed on an IEP.

On cross-examination, appellant testified that she does not agree that R.B. is doing great because of his behavioral problems at school. She spoke of incidents that took place in 2017 before their last hearing. She also stated that it is a problem that appellee does not have R.B. on an IEP. She said that if appellee was granted an extra weekend, it would lessen the time he has to spend with her and his other siblings. She testified that R.B. plays sports during the week but not on the weekends because when he played soccer, they wanted her to drive him up for the games. She said that she did not think this was

appropriate because the time he has to spend with her and his siblings would be affected. She stated that she has three children but has custody of only one. She admitted that Tommy recently had a DHS file opened on him.

On redirect, appellant stated that if the court was to grant her motion to change custody, she would not have a problem allowing appellee to have R.B. every other weekend.

Tommy testified that he and appellant married in June 2017. He stated that appellant is a good parent and "supports [R.B.] through phone calls. She keeps up to date on the Class Dojo. She can't be there. It's three hours away." He said that his income is enough to take care of the whole family, so appellant does not work.

Freida Walker, appellee's mother, testified that appellee is a good father, who is patient with R.B. She also stated that R.B. adores appellee and would miss appellee if custody was changed. She testified that she usually talks to R.B. weekly and they discuss "how [R.B.] would like to play sports." Ashley Cammack, a family friend, testified that appellee is a good parent and is always involved "with sports and school functions."

Appellee testified that he has always spent the same amount of time with R.B. no matter what was going on in his personal life. He stated that R.B. has recently shown an interest in playing flag football and in continuing to play soccer and basketball. He testified that if he had more time with R.B. on the weekends, they could do more stuff together. He said that with the current schedule, R.B. misses his soccer games, birthday parties, and other activities. According to appellee, R.B. "gets whiny" and down about missing out on these activities. Appellee testified that while he was unemployed, he was financially able

to take care of his family, pay his bills, and still have excess. When questioned about future plans for R.B., appellee gave the following testimony:

> I would like to keep [R.B.] on the path he's going for the next two or three years. He's excelling in school. I would like to help him get on a medication that will help him stay calm and make choices. His counselor is working with him to make those choices whether he's on the medicine or not. I would like for him to keep doing what he's doing. He's glad about the school he is in. He loves the kids he goes to school with. He loves where we're at. He's really done a 180 from where he was. He's had all A's and B's most of this year. The counselor said he was doing great.

> I think it would be a big change to take him away from the school and the counselor at this point. It would be hard for him to recover everything that he's known. I think it would be really detrimental for him to be given to Melissa because I'm pretty much all he's known for most of his life. We lived up in Fort Smith for almost his whole life, since he was two and a half. He has lived with me for six years, and he's seven years old.

He stated that R.B. only takes speech therapy and barely qualifies for that. He said that they attend church regularly. He testified that he has concerns about appellant being granted custody of R.B. because he "pretty much have been life to [R.B.]." He stated that he is all R.B. has known. He emphasized that R.B. is doing good in school and he does not think any other change would help R.B. He testified that he worries about the stability of appellant's relationship with Tommy as well as the stability of Tommy's job. He stated that R.B. is finally on the right path and he does not want R.B. to fall behind again.

On cross-examination, appellee stated that it is difficult to make R.B.'s recreational and sports work because every soccer game is played on Saturday, resulting in R.B.'s being able to play in only two soccer games a year. He said that it would be a big change for R.B. to have to move to a new school and change counselors. He stated that there was a period of about a month that R.B. did not get counseling. He admitted throwing objects at Jessica

8

and Megan, yelling at them, and calling them names; however, he stated that it was not in the presence of R.B. When asked what change in circumstances supports a modification of visitation, he responded, "I established him to be staying in one spot. He's in the same school, he's grounded. I don't know if anything changed with her. We don't talk really, so I don't know what's going on with her."

Upon questioning by the court, appellee stated that the IEP included in his exhibits is for R.B.'s speech therapy.

At the conclusion of the hearing, the court found that it was in R.B.'s best interest to remain in appellee's custody. It further found that a material change existed to modify appellant's time with R.B.[2]

The order was filed on November 30. It stated in pertinent part:

1. That the parties shall continue to share joint custody, subject to Plaintiff continuing to be the primary custodian of the parties' child, R.B., 7 years of age.

---

[2]The court made the following oral ruling:

I found that there has been a change based on the child has gotten older, the child is going to be more active in sports, the child is going to be involved in activities. The change is not just the age of the child, but the fact that the child is getting involved in activities and sports and things like that. I didn't really understand the joint custody arrangement other than she gets the extra weekend a month. It doesn't sound to me like they were really coparenting. I think the order allowed her to go to Fort Smith and spend time with the child if she wanted to.★ I didn't hear any evidence that she ever goes to Fort Smith to see the child. That was a consideration as well. She's not using all the visitation she's currently entitled to. I think there's been a sufficient change in circumstances to justify the change in visitation. That will be the order of the Court.

★ There was no language found in the 2017 order allowing appellant to visit R.B. in Fort Smith. However, the 2015 order and amended order contained language allowing appellant to do so if she gave appellee at least three days' notice.

9

Defendant did not product sufficient evidence to show a change of circumstances which would justify a change of primary custody. This decision is based on the best interest of the child. Although there has been some instability on the part of the father, that instability appears to now be resolved and the father has done his best to keep a stable environment for the child.

2. There is some sufficient evidence for a change of the visitation of Defendant and the travel required for that visitation. Those changed circumstances include that the child is older and is more interested in sports, school activities, Church activities, and activities with friends. Due to this changed circumstances, *beginning in three months (January 23, 20[19]);* the court finds that the Defendant shall have visitation with the child on alternate weekends.

Appellant filed a notice of appeal on December 28.[3] This timely appeal followed.

Arkansas law is well settled that the primary consideration in child-custody cases is the welfare and best interest of the children; all other considerations are secondary.[4] Generally, courts impose more stringent standards for modifications of custody than they do for initial determinations of custody.[5] The reason for requiring more stringent standards for modifications than for initial custody determinations is to promote stability and continuity in the life of the child and to discourage repeated litigation of the same issues.[6]

The party seeking modification of the custody order has the burden of showing a material change in circumstances.[7] To change custody, the circuit court must first determine

---

[3]Appellee filed a notice of cross-appeal on January 10, 2019; however, there is no indication in the record before us that he has chosen to pursue it.

[4]*Ellington v. Ellington*, 2019 Ark. App. 395, 587 S.W.3d 237 (internal citations omitted).

[5]*Id.*

[6]*Id.*

[7]*Id.*

that a material change in circumstances has occurred since the last order of custody; if that threshold requirement is met, it must then determine who should have custody with the sole consideration being the best interest of the child.[8] In reviewing child-custody cases, we consider the evidence de novo, but will not reverse a circuit court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence.[9] Whether the circuit court's findings are clearly erroneous turns largely on the credibility of witnesses, and we give special deference to the superior position of the circuit court to evaluate the witnesses, their testimony, and the child's best interest.[10] There are no cases in which the superior position, ability, and opportunity of the circuit court to observe the parties carry as great a weight as those involving minor children.[11]

Appellant argues as her first point on appeal that the trial court erred by finding that it was in R.B.'s best interest to remain in appellee's custody. She contends that the court found a material change in circumstances due to appellee's instability. However, no such finding was made by the court. The court acknowledged that there had been some instability on the part of appellee but that it seemed to be resolved. There is no material change when the alleged problems are resolved.[12] Appellee testified that his instability is no longer an issue, and according to the order, the court believed this testimony. Since there

---

[8]*Id.*

[9]*Id.*

[10]*Id.*

[11]*Id.*

[12]*See id.*

was no material change in circumstances, there was no need for the court to address R.B.'s best interest. Thus, we affirm without addressing appellant's challenges to the court's best-interest finding.

Next, appellant argues that the court erred by finding that a material change existed to warrant modification of her visitation. In finding that there had been a material change in circumstances, the court stated that R.B. is "older and more interested in sports, school activities, Church activities and activities with his friends." The mere fact that a child has gotten older has not been held to constitute a material change in circumstances sufficient to warrant modification of visitation.[13] However, the passage of time, coupled with other factors, can justify a finding of a material change in circumstances.[14] Here, the fact that R.B. is "more interested" in sports and other activities does not satisfy the "other factors" requirement necessary to justify a modification of visitation. Therefore, we reverse the court's modification.

Affirmed in part; reversed in part.

VIRDEN and SWITZER, JJ., agree.

*Kristin Riggan*, for appellant.

*Everett O. Martindale*, for appellee.

---

[13] *See Harrington v. Harrington*, 55 Ark. App. 22, 928 S.W.2d 806 (1996).

[14] *See McCoy v. Kincade*, 2014 Ark. App. 664, 448 S.W.3d 740.