Cite as 2023 Ark. App. 278

# ARKANSAS COURT OF APPEALS

DIVISION II
№ CV-22-375

| | |
|---|---|
| AUDRYANNA CAMERON<br><br>APPELLANT<br><br>V.<br><br>AARON CAMERON<br><br>APPELLEE | Opinion Delivered May 10, 2023<br><br>APPEAL FROM THE UNION COUNTY CIRCUIT COURT [NO. 70DR-19-388]<br><br>HONORABLE MARY THOMASON, JUDGE<br><br>AFFIRMED |

## MIKE MURPHY, Judge

Appellant Audryanna Cameron appeals the February 22, 2022 order of the Union County Circuit Court dissolving the joint-custody arrangement she had with appellee Aaron Cameron and awarding sole custody of the parties' minor children to Aaron, subject to Audryanna's visitation. On appeal, she argues that the change of custody was unsupported and not in the children's best interest. We affirm.

The parties were married in June 2008 and divorced in February 2020. There were three minor children born of the marriage. At the time of the divorce, the parties agreed to a joint-custody arrangement on a "week on/week off" basis. Both parties remarried. On June 14, 2021, the parties and Aaron's wife, Marylu, were at a custody exchange when an altercation between Marylu and Audryanna occurred. Marylu was six months pregnant at the time. Audryanna was arrested and charged with battery. Marylu sought and obtained an

order of protection against Audryanna, and custody of the children was placed temporarily with Aaron.

On September 9, Audryanna filed a motion for contempt and a petition to enforce the joint-custody agreement. That motion alleged that Aaron was not abiding by the joint-custody terms. Aaron responded and petitioned to modify custody, alleging that a material change in circumstances had occurred due to Audryanna's pending criminal charges and that it would be in the best interest of the children to award him sole custody. A hearing on the motions was heard on January 31, 2022.

Officer Earnest Jackson was the first to testify. He testified that he responded to the incident on June 14. He testified that he observed Marylu with lacerations on her face and that he arrested Audryanna. His body-camera footage from the day was introduced. Alison Cardin, Aaron's longtime friend, testified next. She stated that in the last six months, the children have become more respectful and cooperative and seem to be more structured and happier.

Marylu testified next. She first testified about the incident at the custody exchange. She said that she got out of the car because she had one of the children's phones and was going to give it to Audryanna. She explained that when she got out of the car, Audryanna jumped on her, scratched her face, and hit her. Marylu said she grabbed and held Audryanna in an effort to protect herself until Aaron was able to separate the two women. Marylu stated all of this took place in front of the children—who were crying—and that she spent the night

at the hospital. Marylu said this was not the first time Audryanna had been aggressive or confrontational; they had called the police on Audryanna before. However, on cross-examination, text messages introduced indicated that prior to the incident, Marylu had sent antagonistic text messages to Audryanna. It was also revealed that after the incident, Marylu posted Audryanna's mugshot on Facebook.

Audryanna testified. She started by explaining that her postdivorce relationship with Aaron was initially civil, but when he received two thousand dollars in back child support "from his first ex" and purchased a four-wheeler instead of furniture, she called the police so she could retrieve her recliner from his house. She explained that she knew Marylu was pregnant the day of the altercation. Audryanna testified that she did not attack Marylu, she "reacted." Audryanna acknowledged that the children had watched the whole event, including when she was handcuffed.

Audryanna further explained, however, that she has been to therapy and is better at managing her frustration and feelings. She acknowledged that her behavior and interactions with Marylu had ultimately hurt her children the most, and she takes "full responsibility" for her actions. Even still, Audryanna admitted texting her oldest daughter after she was released from jail, writing, "I'm trying to get y'all back, but your dad and Marylu are keeping you away. So just know I am trying . . . Mommy loves you so much."

The court next heard testimony from Aaron. He said that when Audryanna found out Marylu was pregnant, she came to his house "acting hostile" and "banging on his door."

He called the police. He testified that Audryanna sent him a lot of degrading text messages. He said that on the day of the incident, he parked far away from Audryanna's car, but Audryanna came toward their car. He testified that Marylu got out of the car, and the two started fighting until he broke them up and called the police. Aaron said that the children were screaming the whole time. He stated that Marylu then ran to Audryanna's Jeep and took the keys out so that Audryanna could not get away before the police arrived. Aaron explained that Audryanna tried to fight Marylu again, but Marylu "kicked [Audryanna] in the chest." After Audryanna was arrested, Marylu went to the hospital, and Aaron took the children to a sitter before joining Marylu at the hospital.

Aaron testified that since he has had sole custody, the children have had a remarkable change in behavior. They are independent and responsible and help with chores. The children have gone to counseling. He takes them hunting and fishing and horseback riding. Audryanna's counsel cross-examined Aaron extensively on his relationship with Marylu prior to their marriage due to her pregnancy. Aaron testified that Marylu did not stay the night when the children were with him.

Grace Palculict, a counselor working out of Harmony Baptist Church, has counseled the Cameron children weekly for the last four months. She testified that Aaron has a nice, clean home. She said the children are outgoing and talkative and that they like Marylu. She opined that the children have a good routine at Aaron's home. Marylu makes the children do chores. She said the children also love their mother and she does not think Audryanna

poses a danger to the children.

Brice Baughn, Audryanna's husband, testified that Audryanna is a good mother. He said Audryanna has seemed very depressed since the entry of the temporary order that placed sole custody of the children with Aaron. He said Audryanna has made significant strides in regulating her emotions. He says the children never seem to want to leave on the weekends that Audryanna has them.

Audryanna called her ten-year-old daughter as a witness. The child said she did not want to make either of her parents mad, and she loves both of her parents. She said she is happy spending time with both parents. She explained that both parents talked to her about the case.

At the conclusion of the evidence, the court took the case under advisement. The subsequent order found that a material change in circumstances had occurred when Audryanna physically attacked Marylu in front of the three children. Audryanna was charged with felony battery, and Marylu, six months pregnant at the time, had to spend a night at the hospital. The court also found that changing the custody arrangement from joint custody to the sole custody with Aaron was in the children's best interest. The court wrote:

> [Aaron] is the only one (out of the two parents and two step-parents) who does not appear to want to post or send text messages of an improper nature. He does seem concerned about his children. [Aaron] appears mild-mannered. The Court believes that [Aaron] will not discuss or allow others to make disparaging remarks about [Audryanna] in the presence of the children and will encourage a relationship with [Audryanna] and her new husband. The same cannot be said about [Audryanna].

Aaron was awarded sole custody, and Audryanna was awarded visitation and ordered

5

to pay child support. Audryanna appealed from this order. On appeal, she argues that (1) Aaron was the ultimate cause of the material change in circumstances due to allegedly breaching a noncohabitation agreement; (2) the court did not take steps to "reduce areas of conflict" required by Arkansas Code Annotated section 9-13-101 (Supp. 2021); (3) the court erred in allowing two witnesses to testify to the children's desires; and (4) the court inappropriately used custody as a way to punish Audryanna, and it was not in the children's best interest.

In reviewing child-custody cases, we consider the evidence de novo but will not reverse a circuit court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Hewett v. Hewett*, 2018 Ark. App. 235, 547 S.W.3d 138. We give due deference to the superior position of the circuit court to view and judge the credibility of the witnesses. *Id.* This deference is even greater in cases involving child custody because a heavier burden is placed on the circuit court to utilize to the fullest extent its powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *Id.*

To modify a custody decree, the circuit court must apply a two-step process: first, the court must determine whether a material change in circumstances has occurred since the divorce decree was entered; second, if the court finds that there has been a material change in circumstances, the court must determine whether a change of custody is in the child's best interest. *Shell v. Twitty*, 2020 Ark. App. 459, 608 S.W.3d 926. We impose more stringent

standards for modifications in custody than for initial determinations of custody. *Alphin v. Alphin*, 364 Ark. 332, 219 S.W.3d 160 (2005). The party seeking modification has the burden of showing a material change in circumstances. *Id.*

Audryanna first argues that Aaron's relationship with Marylu was the catalyst for the discord between the parties. She alleges that Aaron breached the noncohabitaion clause of their divorce decree. (That clause was part of the parties' custody and property-settlement agreement and restricted the parties from having overnight guests when the children were home.) Audryanna argues that "[t]he [c]ourt erred when it found a material change of circumstances had occurred as the only material change was a breach of the cohabitation agreement by [Aaron]." Audryanna's argument is confusing and largely misplaced: the court found a material change occurred when Audryanna was arrested for felony battery in front of her children. This finding is supported by the record. The order was silent about any issues regarding cohabitation, and Audryanna did not ask for additional findings. The burden of obtaining a ruling is on the movant; objections and matters left unresolved are waived and may not be relied upon on appeal. *Woods v. Woods*, 2013 Ark. App. 448, at 8.

Audryanna next contends that the circuit court, in changing custody, ignored the provisions in Arkansas Code Annotated section 9-13-101 requiring circuit courts to attempt to preserve joint custody relationships by entering orders that reduce areas of conflict. The only subsection of 9-13-101 concerning reducing conflict when confronted with custody modification is found in Arkansas Code Annotated section 9-13-101(b)(1)(A)(iii). It provides

7

that

> [i]f, at any time, the circuit court finds by a preponderance of the evidence that one (1) parent demonstrates a pattern of willfully creating conflict in an attempt to disrupt a current or pending joint-custody arrangement and the circuit court is unable to enter an order that will reduce areas of conflict caused by the disruptive parent, the circuit court may deem such behavior as a material change of circumstances and may change a joint custody order to an order of primary custody to the nondisruptive parent.

Ark. Code Ann. § 9-13-101(b)(1)(A)(iii).

Here, however, the court did not find that Audryanna demonstrated "a pattern of willfully creating conflict in an attempt to disrupt a current or pending joint custody arrangement." Instead, it found that "the physical attack on the step-mother, Marylu, by [Audryanna] in the presence of the children" was the material change in circumstances. Had the court made a finding of willfully created conflict, then Audryanna's analysis might be more applicable. That is not the case. Audryanna's physical attack of the children's stepmother in front of the children was a material change in circumstances. It led to her arrest in front of the children, the entry of an order of protection, and the grant of sole temporary custody to Aaron.

Audryanna further argues that the court erred in allowing the testimony of two witnesses, Allison Cardin and Grace Palculict. She says their opinions were "based on the statements of the children." Audryanna cites no authority and makes no convincing argument to support her position that this was erroneous. The failure to cite authority or make a convincing argument is sufficient reason for affirmance. *Baggett v. Benight*, 2022 Ark.

8

App. 153, at 10, 643 S.W.3d 836, 841. Furthermore, when Audryanna's counsel did object to the line of questioning (Cardin had testified that the children were more respectful and had been doing chores since Aaron obtained temporary sole custody), the court overruled it, finding that Cardin was providing her observations. Counsel never objected to any testimony offered by Palculict at trial.

When a witness is not testifying as an expert, her testimony in the form of opinions or inferences is limited to those opinions or inferences that are (1) rationally based on the perception of the witness; and (2) helpful to a clear understanding of her testimony or the determination of a fact in issue. Ark. R. Evid. 701. Rule 701's "rational connection test" requires that the opinion or inference is one that a normal person would form on the basis of the observed facts. *Hopkins v. Ark. Dep't of Hum. Servs.*, 79 Ark. App. 1, 8–9, 83 S.W.3d 418, 423 (2002). We will not reverse a court's decision to admit relevant evidence absent an abuse of discretion. *Id.* As to Cardin's testimony, the court stated from the bench, "I think the observations are crucial, and I appreciate her observations." Allowing Cardin and Palculict to testify was not an abuse of discretion.

Finally, Audryanna asserts that there was no evidence that the children were negatively impacted by her conduct and that the court is using custody to punish her. Whether the children were negatively impacted by her conduct, however, is not the standard against which we conduct our review. As explained, the court found the attack to be the material change. The next step, then, is to determine whether the children's best interest

9

may be best served through a change of custody. Regarding best interest, the court found that Aaron is the parent with the most appropriate behavior and the parent who would foster relationships between the children and the other parent. The court's best-interest finding is supported by the record.

Affirmed.

ABRAMSON and GRUBER, JJ., agree.

*F. Mattison Thomas III*, for appellant.

*Law Offices of Shepherd & Shepherd, P.A.*, by: *Matthew J. Shepherd*, *John Thomas Shepherd*, and *William T. Hegi*, for appellee.