Cite as 2024 Ark. App. 317

# ARKANSAS COURT OF APPEALS

DIVISION II
NO. CV-23-417

| | |
|---|---|
| STACI SNIDER | Opinion Delivered May 15, 2024 |
| APPELLANT | APPEAL FROM THE UNION COUNTY COUNTY CIRCUIT COURT |
| V. | [NO. 70DR-19-126] |
| JEFFREY SNIDER | HONORABLE MARY THOMASON, |
| APPELLEE | JUDGE |
| | AFFIRMED |

## STEPHANIE POTTER BARRETT, Judge

Appellant Staci Snider appeals the Union County Circuit Court's order modifying custody and awarding appellee Jeffrey Snider sole custody of their minor child (MC1). On appeal, Staci argues that the circuit court's decision was clearly erroneous because there was not a material change in circumstances and modification is not in the child's best interest. We find no error and affirm.

The parties were married for approximately nine years prior to their separation in 2019. On March 11, 2019, Jeffrey filed a complaint for divorce. A divorce decree was entered on October 30, 2019, which provided that the parties would share joint legal custody of MC1 with Staci receiving full physical custody subject to Jeffrey's alternating-weekend visitation. Jeffrey was ordered to pay child support and spousal support to Staci. Pursuant to the divorce decree, Jeffrey was awarded visitation with MC according to the circuit court's

standard visitation guidelines, with the caveat that Jeffrey's every other weekend was to be from Thursday after school until Monday morning when school resumed. Staci alleged she had issues in interpreting the circuit court's standard visitation guidelines that resulted in Jeffrey's filing a "Motion to Clarify Terms of Decree" on August 10, 2020, because he was being denied his visitation rights. After a hearing on Jeffrey's motion, the circuit court ruled in favor of Jeffrey and awarded Jeffrey make-up visitation with MC1 in an order filed October 10, 2020.

On September 1, 2021, Jeffrey filed a petition for change of custody alleging that there had been a material change in circumstances since the parties' divorce and that it would be in MC1's best interest to be placed in his custody. Staci countered by filing a motion for contempt alleging that Jeffrey's child support, spousal support, and one-half of the child's medical expenses were in arrears and that it would not be in MC1's best interest for a change of custody to be granted. Tiffany Nutt was appointed attorney ad litem to represent MC1's best interest in this dispute.

Jeffrey testified that Staci attempted to micromanage any contact MC1 had with him by requiring MC1 to use only her phone to talk to Jeffrey on speaker so that she could listen to the conversation. He testified that she would not work with him on visitation with MC1 and allowed it only at her convenience. He further testified that Staci refused to allow MC1 to use the phone provided to him by Jeffrey so that he could communicate with him directly. Jeffrey testified that he is allowed to talk to MC1 only once during the week and a half MC1 is not with him. Jeffrey testified that in 90 percent of his conversations with MC1, Staci was

in the background talking to him and disrupting the entire conversation. Both parties admit they are unable to communicate effectively with each other and that Staci insisted that Jeffrey communicate with her only through text messages. Jeffrey testified that Staci is a good mother with good qualities. He further testified that MC1 is well cared for at Staci's house and that he is loved by both parents.

Staci testified that MC1 does well in school in the Magnolia School District. He makes mostly As and Bs and is enrolled in the Take Flight program to address what his teachers called dyslexic tendencies. Staci testified that MC1 participates in extracurricular activities such as football, basketball, and baseball. Staci cares for children in her home during the day but has the flexibility to attend all of MC1's after-school practices and games. According to MC1's teacher, Staci is involved in MC1's education. She helps with homework, attends parent-teacher conferences, and checks in with his teachers to make sure he's doing well.

Staci admitted she did not allow MC1 to go on the youth hunt with Jeffrey for the weekend, even though MC1 and Jeffrey have participated in the youth hunt every other year since MC1 was born. Staci took MC1 out of karate classes that he loved without telling Jeffrey. Staci told MC1 she would allow him to enroll in karate if his dad would pay for it. However, in her testimony, she admitted she would not allow MC1 to re-enroll. Staci admitted she makes school and medical decisions for MC1, including enrolling him in sports, the Take Flight program, and ARKids health insurance, and then she notifies Jeffrey after the fact, despite the parties' joint-custody arrangement.

Staci testified that when her stepfather died, she went to Fayetteville to the funeral and left MC1 with her boyfriend, Jonathan Thompson, for two nights on Easter weekend rather than allow Jeffrey to keep MC1 while she was away without telling him of her plans so he could keep MC1.

Jeffrey testified that during a visitation with MC1, MC1 cut his foot, and he and his wife, Melissa, took MC1 to the El Dorado emergency room and notified Staci. When Staci arrived, she would not enter the emergency room until hospital officials escorted Melissa out of the room. MC1 was screaming for Melissa to stay with him and became hysterical when she was removed. Jeffrey testified that he carried MC1 to a follow-up doctor's appointment, but Staci would not allow him to be in the examination room with the doctor to hear what the doctor recommended for treatment.

Melissa was previously married to Charlie McHenry, and they have a daughter (MC2). Melissa testified that Staci and McHenry would pry information from MC2 about Melissa and Jeffrey when MC2 visited McHenry. The testimony showed that McHenry and Staci "constantly" question MC2 about how they can get MC1 "on the stand."

In Staci's initial testimony, she said that she and Thompson are just friends and described him as a family friend in answer to a question in a questionnaire by the attorney ad litem. However, Thompson testified they had been together since April 2021. Staci initially stated that she started seeing him in April 2022 and that they had concealed their relationship. However, Thompson testified that they were together or communicating every day, eating meals together with their children, and going to clubs to dance. He did not deny

4

he had spent more than one hundred nights at Staci's home and engaged in sexual intercourse.

According to the attorney ad litem, both parties are great parents with great families. The ad litem stated that MC1 doesn't have a negative word to say about either parent and that he would benefit from equal time with both parents.

I. *Modification of Custody*

Modification of custody is a two-step process: first, the circuit court must determine whether a material change in circumstances has occurred since the last custody order; and second, if the court finds that there has been a material change in circumstances, the court must determine whether a change of custody is in the child's best interest. *Shell v. Twitty*, 2020 Ark. App. 459, at 4, 608 S.W.3d 926, 929–30. The best interest of the children is the polestar in every child-custody case; all other considerations are secondary. *Skinner v. Shaw*, 2020 Ark. App. 407, at 11–12, 609 S.W.3d 454, 461. Moreover, the crux of these cases is that a child-custody determination is fact specific, and each case ultimately must rest on its own facts. *Self v. Dittmer*, 2021 Ark. App. 85, at 9, 619 S.W.3d 43, 48. There are a number of cases in which we have found that a pattern of alienating behaviors by one parent is detrimental to a child's best interest. *See, e.g.*, *Sharp v. Keeler*, 99 Ark. App. 42, 256 S.W.3d 528 (2007); *Hanna v. Hanna*, 2010 Ark. App. 58, at 16, 377 S.W.3d 275, 284 ("Whether one parent is alienating a child form the other is an important factor to be considered in change of custody cases, for . . . a caring relationship with both parents is essential to a

healthy upbringing" (quoting *Turner v. Benson*, 59 Ark. App. 108, 113, 953 S.W.2d 596, 598 (1997))).

## II. *Standard of Review*

In child-custody cases, we review the evidence de novo, but we do not reverse the findings of the court unless they are clearly contrary to the preponderance of the evidence. *Thompson v. Thompson*, 63 Ark. App. 89, 974 S.W.2d 494 (1998). We recognize and give special deference to the superior position of a circuit court to evaluate the witnesses, their testimony, and the child's best interest. *Cunningham v. Cunningham*, 2019 Ark. App. 416, at 4, 588 S.W.3d 38, 40. We have often stated that we know of no cases in which the superior position, ability, and opportunity of the circuit court to observe the parties carry as great a weight as those involving children. *Watts v. Watts*, 17 Ark. App. 253, 707 S.W.2d 777 (1986). A finding is clearly against the preponderance of the evidence, when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Hollinger v. Hollinger*, 65 Ark. App. 110, 986 S.W.2d 105 (1999).

## III. *Material Change of Circumstances*

The first step in deciding a change of custody is to determine whether there has been a material change in circumstances. In *Walker v. Torres*, 83 Ark. App. 135, 118 S.W.3d 148 (2003), the court held,

> In determining whether a change of custody is warranted, the trial judge must first determine whether there has been a material change in circumstances of the parties since the most recent custody order. While custody is always modifiable, in order to promote stability and continuity for the children and to discourage repeated

6

litigation of the same issues, Arkansas courts require a more rigid standard for custody modification than for initial custody determination.

The circuit court made specific findings of fact to show there has been a change in circumstances by Staci's attempts to micromanage any contact MC1 has with Jeffrey, does not allow MC1 to have phone communication without the phone being on speaker for her to hear, does not allow MC1 to use a cell phone that Jeffrey provided to him, and does not encourage communication with the Jeffrey. Failure of communication, increasing parental alienation by a custodial parent, and inability to cooperate can all constitute a material change in circumstances sufficient to warrant modification of custody. *Self*, 2021 Ark. App. 85, at 9, 619 S.W.3d at 48; *Montez v. Montez*, 2017 Ark. App. 220, 518 S.W.3d 751. Further, Staci also has a confusing relationship with Charlie McHenry, the ex-husband of MC1's stepmother. Staci also has a "boyfriend" whose children are MC1's cousins, which also causes confusion for MC1. The circuit court found Staci had proved that she does not understand the concept of joint custody in that she believes she is in total control of every aspect of MC1's relationship with Jeffrey, such as whether Jeffrey sees MC1 or whether Jeffrey is allowed to be present to help pick out MC1's glasses or attend a doctor's appointment. Further, we have held that the combined, cumulative effect of particular facts may together constitute a material change. *Shannon v. McJunkins*, 2010 Ark. App. 440, at 10, 376 S.W.3d 489, 494; *see also McCoy v. Kincade*, 2015 Ark. 389, at 5, 473 S.W.3d 8, 11.

Staci argues multiple times in her brief that the circuit court misunderstood or mischaracterized the evidence. Staci is merely arguing that the circuit court should have believed her version of events over the testimony of Jeffrey. It is evident from the circuit

7

court's comments in the order that it did not believe Staci's testimony about why she did some of the things that she did or the motivation behind some of her actions. This credibility finding was the circuit court's determination to make. Arkansas law provides that in considering conflicting evidence in a child-custody case, "[d]eference is given to the circuit court's superior position to determine the credibility of witnesses, the weight to be given their testimony, and the child's best interests." *Alsina v. Hicks*, 2023 Ark. App. 485, at 3, 678 S.W.3d 449, 452 (citing *Smith v. Smith*, 2023 Ark. App. 108, 661 S.W.3d 273).

Staci argues that each allegation should be viewed individually, and if that allegation did not, in and of itself, establish a material change of circumstances, it should be insufficient for modification. This court has found a "material change in circumstances" to exist on the basis of uncooperative behavior, communication failures, increasing alienation by a custodial parent, and inability to coparent. *See, e.g.*, *Wallis v. Holsing*, 2023 Ark. App. 137, at 5, 661 S.W.3d 284, 288. Here, as in *Alsina*, Staci essentially contends that the findings of the circuit court did not constitute a material change of circumstances, nor did they establish that the communication and failure-to-cooperate issues arose as a result of her conduct. However, reaching a different conclusion in this case would encroach on the superior position of the circuit court to evaluate witness testimony and credibility. *Alsina*, 2023 Ark. App. 485, 678 S.W.3d 449.

IV. *Best Interest*

For her second point on appeal, Staci argues that there was not sufficient evidence to show that modification of custody was in the best interest of MC1. Once the material-

change-of-circumstances threshold requirement has been met, the court must then determine who should have custody, with the sole consideration being the best interest of the child. *Acklin v. Acklin*, 2017 Ark. App. 322, 521 S.W.3d 538. The best interest of the children is the polestar in every child-custody case; all other considerations are secondary. *Cordell v. Cordell*, 2018 Ark. App. 521, at 13, 565 S.W.3d 500, 506. In its order, the circuit court commented on Staci's continuing anger toward Jeffrey. The circuit court found that it appeared Staci wishes to disrupt the father-son relationship to get back at Jeffrey. The circuit court also referred to the limited phone communication Staci allows Jeffrey with MC1 as well as how she monitors their phone conversations by requiring MC1 to have the call on speaker. The court found that MC1 is aware of Staci's anger toward Jeffrey and that he is confused about his mother's relationship with Thompson. The court also found that Staci and McHenry exchange information about Jeffrey and Melissa's activities through MC2 who lives in Jeffrey's home.

In its order, the court stated it was not certain whether Staci understands the effect her relationship has on MC1 because it appears Staci and Thompson try to hide it. The circuit court stated, "Clearly, if Staci had the child's best interest at the forefront, she would be open with her relationship with Thompson and would be concerned about how the relationship is affecting him." Another incident in which Staci did not consider MC1's best interest was when MC1 cut his foot in an accident while with Jeffrey. Jeffrey called Staci and informed her they were in the emergency room in El Dorado. When Staci arrived at the hospital, she insisted that the hospital administration remove the stepmother, Melissa, from

9

the emergency room. The undisputed testimony was that MC1 asked that Melissa stay with him in the emergency room. During MC1's follow-up vi sit for the foot injury with his regular physician, Staci allowed Jeffrey to carry MC1 into the doctor's office for the appointment but would not allow him to stay in the room for the examination even though Jeffrey would have had the most information concerning the accident and what measures were taken following the injury. There are a number of cases in which we have found that a pattern of alienating behaviors by one parent is detrimental to a child's best interest. *See, e.g.*, *Sharp v. Keeler*, 99 Ark. App. 42, 256 S.W.3d 528 (2007). The circuit court recognized that Staci's pattern of behavior was an effort to minimize Jeffrey's ability to communicate with MC1 and establish a healthy relationship.

The court found that Staci has proved she cannot co-parent and that Jeffrey would be more open with the time MC1 spends with his mother and would allow the phone communication Staci has denied him.

Having reviewed the court's findings, the record as a whole, and the applicable case law, we conclude that the court's finding of a material change in circumstances and the change of sole custody to Jeffrey is in MC1's best interest and is not clearly erroneous. We therefore affirm.

Affirmed.

THYER and BROWN, JJ., agree.

*Taylor & Taylor Law Firm, P.A.*, by: *Jennifer Williams Flinn*, *Andrew M. Taylor*, and *Tasha C. Taylor*, for appellant.

*The Sawyer Firm, PLLC*, by: *R. Jeffrey Sawyer*, for appellee.