Cite as 2024 Ark. App. 533

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-23-757

| | |
|---|---|
| LINAIA LEDOUX-SYROCK | Opinion Delivered October 30, 2024 |
| APPELLANT | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, GREENWOOD DISTRICT [NO. 66GDR-17-272] |
| V. | |
| GERARD LEDOUX | |
| APPELLEE | HONORABLE SHANNON L. BLATT, JUDGE |
| | AFFIRMED |

## MIKE MURPHY, Judge

Appellant Linaia Ledoux-Syrock appeals from the Sebastian County Circuit Court's order modifying custody and visitation from joint custody to primary custody in appellee Gerard Ledoux. Linaia argues that the court erred in finding that a material change in circumstances had occurred since the entry of the parties' previous custody order and that it was in the child's best interest to modify custody. We affirm.

Linaia and Gerard were divorced by decree on October 25, 2018, which granted them joint legal and physical custody of their minor child (M.C.) (DOB 07/07/15). An agreed order was entered on January 27, 2021, wherein Gerard was named primary legal custodian of M.C. because Linaia acknowledged a material change in circumstances warranted a modification. The parties continued to share joint physical custody. On October 17, 2022,

Gerard filed a petition for temporary and permanent modification of custody and an ex parte order for emergency custody based on allegations that there had been a material change in circumstances affecting M.C.'s best interest, including the fact that Linaia had been suffering from serious mental-health issues that rendered her unstable and incapable of caring for M.C. In support of the petition, he referenced two suicide attempts by Linaia that were witnessed by M.C. Linaia acknowledged that the allegations contained in the petition were true, and a November 30, 2022 temporary order granted primary custody to Gerard and supervised visits to Linaia.

A final hearing was held on June 29, 2023. At the final hearing, Linaia testified that since her divorce from Gerard, she had gotten married, moved, had a baby, and experienced postpartum depression. She shares a two-year-old with her current husband from whom she is currently separated. Linaia testified that she is working as a delivery driver and grocery shopper and that she earns on average around $550 a month total gross income. She testified that she cannot work in a typical work environment due to her "complex PTSD complications" and other health issues. She believed that she had a heart attack in July 2022, but she did not go to the emergency room for fear of not being taken seriously. Linaia testified that she has a tendency to pass out and get lightheaded when she experiences stress. Linaia stated her bills were being paid by her estranged husband until she can become more financially stable.

Linaia acknowledged and recalled her two suicide attempts. On September 23, 2022, Linaia had a disagreement with her husband, and she overdosed on more than twenty-six

prescription pills. Linaia was taken to the hospital by ambulance and was admitted for approximately three days. Linaia had both M.C. and her younger child with her at the time of the attempt. The following October, Linaia got into another argument with her husband while riding in the car with him and both of her children. During the argument, Linaia unbuckled her seatbelt, unlatched the door, and attempted to exit the moving car while saying she no longer wanted to live. When the car stopped, she got out and crossed a field into a wooded area where she disappeared for several hours. M.C. saw all of this. Linaia voluntarily entered the Crisis Stabilization Unit after this incident.

A psychological evaluation was introduced from June 7, 2023. It provided that Linaia meets the clinical criteria for the diagnosis borderline personality disorder. Linaia denied the need for additional treatment, and she has not implemented additional support since this diagnosis or her suicide attempts. Linaia testified that she stopped taking her medicine and has not experienced thoughts of harm.

Linaia acknowledged that her parenting may be considered "a little bit unconventional"—she occasionally breastfed M.C. up until he was seven years old and she had adult conversations with M.C. during her supervised visits. Linaia also regularly discussed her medical diagnoses and health issues with M.C.

Gerard testified that he had remained married, working at the same job and living in the same home since the entry of the last order. Gerard testified that he has a stable income that is sufficient to provide for M.C. Gerard filed the petition seeking a modification of custody and visitation because he feels Linaia is mentally unstable and emotionally abusive.

Gerard testified that visitation exchanges have been upsetting for M.C. and that M.C. regularly has to console Linaia, who will cry and become emotionally unstable at exchanges. Gerard testified that since M.C. witnessed Linaia's suicide attempts, he is concerned M.C. will not be able to tell Linaia how he feels for fear of upsetting her. Gerard is also concerned that Linaia has less support now and more stressors in her life and that she will not be able to handle the stress of her children. Gerard testified that he has concerns that Linaia doesn't acknowledge her mental diagnoses and fails to seek treatment options. Gerard requested that he be awarded primary custody and that Linaia have monitored, graduated visitation until she proves her stability and commitment to mental-health treatment before progressing into the court's standard order of visitation.

Linaia's licensed professional counselor testified that she has been treating her weekly since 2021, although that had recently changed to twice a week. The counselor testified that changes to the treatment plan were made after Linaia's suicide attempts in 2022, including creating safety plans.

The ad litem recommended—and testified that it would be in M.C.'s best interest—that Gerard have primary custody and that Linaia have visits somewhere other than the supervised facility where visits have taken place before phasing into unsupervised visits to confirm all is going well. The ad litem reported that he had reviewed the supervised-visitation reports and that Linaia had engaged in conversations with M.C. that were better suited for discussing with an adult. The ad litem stated that his recommendations were contingent on Linaia maintaining her mental-health treatment and following the recommendations of her

4

counselors and physicians. Finally, the ad litem recommended that Linaia no longer breastfeed M.C.

The court entered an order continuing primary custody with Gerard and implemented a graduated visitation schedule for Linaia. Linaia now appeals.

This court performs a de novo review of child-custody matters, but we will not reverse a circuit court's findings unless they are clearly erroneous. *Pace v. Pace*, 2020 Ark. 108, at 9, 595 S.W.3d 347, 352. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been made. *Smith v. Parker*, 67 Ark. App. 221, 224, 998 S.W.2d 1, 3 (1999).

To modify a custody decree, the circuit court must apply a two-step process. First, it must determine whether there has been a material change in circumstances since issuance of the last order of custody—in this case, the January 2021 agreed order. Second, if the court finds that there has been a material change in circumstances, the court must determine whether a change of custody is in the child's best interest. *Snider v. Snider*, 2024 Ark. App. 317. The best interest of the child is the polestar in every child-custody case; all other considerations are secondary. *Id.* We give special deference to the superior position of the circuit court to evaluate the witnesses, their testimony, and the child's best interest. *Bray v. Bray*, 2020 Ark. App. 111, 595 S.W.3d 72.

Linaia argues there was no evidence presented of a material change. She contends she is not currently a potential harm to M.C. and that there was no evidence presented that M.C. has been affected by her actions. Her argument has no merit.

Since the entry of the last custody order in January 2021, Linaia has experienced multiple negative material changes in her life affecting her fitness and stability as a parent. Most importantly, Linaia acknowledged there had been a material change in circumstances in the agreed temporary order, and she did not present convincing evidence at the final hearing of how her situation was any different. Linaia attempted suicide twice in the presence of her children, she is financially dependent on her estranged husband, she admittedly still has stressors that exacerbate her mental-health struggles, and she received a diagnosis of borderline personality disorder. While Linaia testified that her instability is no longer an issue, the court clearly did not believe her testimony. Moreover, there is no requirement that the circuit court wait until a child is actually harmed before finding that a material change in circumstances warrants a change in custody. *Sisson v. Sisson*, 2012 Ark. App. 385, 421 S.W.3d 312. Accordingly, the court's finding of a material change of circumstances was not clearly erroneous.

Next, Linaia argues that, even if the circuit court properly found that there had been a material change in circumstances, there was not sufficient evidence to show that it was in M.C.'s best interest to modify custody.

Since the entry of the last custody order, Linaia conceded that M.C. was at imminent risk of harm should he continue to be in her care. Further, the record supports the court's finding that Gerard was the parent with the most appropriate behavior and stability. Again, Linaia alleges that there was no evidence presented of actual harm to M.C. She claims M.C. is thriving, has friends, and is doing well in school. Not only is this a request to reweigh the

evidence but also, it is a request to determine whether M.C. was negatively affected by her conduct. This is not the standard against which we conduct our review. *See Cameron v. Cameron*, 2023 Ark. App. 278. M.C.'s best interest is supported by the custody modification.

For these reasons, we do not believe with definite and firm conviction that a mistake has been made.

Affirmed.

GRUBER and BARRETT, JJ., agree.

*Lisa-Marie Norris*, for appellant.

*Bryant Law Partners, LLC*, by: *Veronica L. Bryant*, for appellee.